Peter S. Partee, Sr.
Andrew Kamensky (*pro hac vice* admission pending)
Jack A Molemkamp
Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Proposed Attorneys for Debtors
 and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIT-BASED ASSET SERVICING AND SECURITIZATION LLC, et al., | Case No. 10-16040 (ALG) |
| Debtors.[1] | Joint Administration Requested |

**MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION
(I) FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING
THE LIMITED USE OF CASH COLLATERAL AND (B) GRANTING ADEQUATE
PROTECTION TO THE SENIOR LENDERS AND (II) FOR THE SCHEDULING
OF A FINAL HEARING ON THE USE OF CASH COLLATERAL AND
THE GRANT OF ADEQUATE PROTECTION TO THE SENIOR LENDERS**

The debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby move (the "Motion"), for (i) entry of an interim order, the proposed form of which is annexed hereto as **Exhibit A** (the "Interim Order"), and the entry of a final order (the "Final Order," and together with the Interim Order, the "Cash Collateral Orders"), pursuant to sections

---

[1] The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment Management LLC, NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish Management Group LLC.

105, 361, 362, 363 and 364 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), (a) authorizing the Debtors' limited use of Cash Collateral (defined below) to fund an orderly liquidation of their estates and to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing and (b) granting adequate protection to the Debtors' Senior Lenders (defined below) and (ii) scheduling a final hearing (the "Final Hearing") on the Motion to consider entry of the Final Order. In support of the Motion, the Debtors submit the *Declaration of Andrew Rickert in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"). In further support of the Motion, the Debtors respectfully represent as follows:

### I. Background

**A. General Background**

1. On November 12, 2010 (the "Petition Date"), each of the Debtors filed a *Voluntary Petition* for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or an examiner has been made in the Chapter 11 Cases and no statutory committees have been appointed or designated.

2. Concurrently with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these Chapter 11 Cases under the case of Credit-Based Asset Servicing and Securitization LLC. A description of the Debtors' businesses, the reasons

for filing these Chapter 11 Cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 of the Bankruptcy Code is set forth in the First Day Declaration, which is being filed contemporaneously with this Motion.

### B. The Debtors' Capital Structure and the RFA

3. As set forth in greater detail in the First Day Declaration, the Debtors financed their prepetition activities with multiple repurchase agreements of mortgage loans and mortgage-backed securities (collectively, the "Repurchase Agreements"), and a variety of secured and unsecured debt. Substantially all of the Repurchase Agreements constituted repurchase agreements within the meaning of section 101(47) of the Bankruptcy Code and fell within the safe-harbor of section 559 of the Bankruptcy Code. The Debtors' principal secured debt consisted of a $1,855,000,000 senior secured credit facility (the "Senior Credit Facility") syndicated among a number of lenders (the "Senior Lenders") and secured by first-priority liens on and security interests in substantially all of the Debtors' assets (other than the assets covered by the Repurchase Agreements) and junior liens on and security interests in the Debtors' assets covered by the Repurchase Agreements (the "Senior Credit Facility Collateral").

4. As part of a large-scale forbearance and restructuring in the Summer and Fall of 2007, culminating in the execution of the Override Agreement (as defined in the First Day Declaration), the Debtors granted numerous subordinate liens and security interests, including without limitation subordinate liens and security interests on the Senior Credit Facility Collateral as additional collateral security for the Repurchase Agreements. Under the Intercreditor Agreement (as defined in the First Day Declaration) executed simultaneously with the Override Agreement, however, the Senior Lenders have the exclusive and unilateral right to enforce their

liens and security interests against, and otherwise consent to dispositions of, the Senior Credit Facility Collateral.

5. Over the course of the past 40 months, based on defaults under the Senior Credit Facility triggered by the mortgage crisis in the United States and pursuant to multiple forbearance and related agreements, the vast majority of the collateral for the Senior Credit Facility has been sold or foreclosed upon and the proceeds thereof applied to reduce the balance of the Senior Credit Facility to its current principal balance of approximately $170 million. The collateral remaining in the Debtors' possession and control as of the Petition Date (collectively, the "Remaining Collateral") consists principally of (i) various subordinated tranches of mortgage-backed securities, including the Trust Securities, (ii) the management rights with respect to certain collateralized bond and debt obligation issuances, (iii) whole loans, (iv) REOs, (v) claims against third parties, (vi) deposits with surety bond providers, (vii) furniture, fixtures, equipment and various forms of intellectual property, (viii) receivables for the unused amount, if any, of professional retainers, and (ix) cash collateral on deposit in the Debtors' centralized cash operating account.

6. Similarly, based on defaults under the Repurchase Agreements triggered by the mortgage crisis in the United States, all of the Repurchase Agreements have been terminated by the respective counterparties, and substantially all of the assets subject to the Repurchase Agreements have been sold or retained by such counterparties.

7. Pursuant to the Restructuring Facilitation Agreement, dated as of September 20, 2010 (the "RFA"), by and among the Debtors, JPMorgan Chase Bank, N.A., as administrative agent under the Senior Credit Facility (the "Administrative Agent"), and certain lenders under the Senior Credit Facility that are signatories to the RFA (collectively, the "Participant

Lenders"), the Administrative Agent and Participant Lenders have agreed *inter alia* to permit the Debtors to use up to $8.2 million of the cash proceeds of the Remaining Collateral in accordance with the terms and conditions of the Interim Order. The RFA provides a timeline pursuant to which the Debtors are to use their respective best efforts to liquidate the Remaining Collateral and seek confirmation of a joint chapter 11 plan for the Debtors.

II. **Concise Statement Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2[2]**

8. In accordance with Bankruptcy Rule 4001(b)(1)(B)(i)-(iv) (relating to the use of cash collateral) and Local Rule 4001-2(a)(relating to the use of cash collateral and obtaining credit), below is a concise statement and summary of the nature of the Debtors' proposed use of the Cash Collateral:

| TERM | DESCRIPTION | CITATION |
|---|---|---|
| **Use of Cash Collateral** | Subject to the limitations set forth in the Cash Collateral Orders and solely prior to a Termination Event (defined in the Interim Order), the Debtors are entitled to use any cash received in respect of the Senior Credit Facility Collateral (defined in the Interim Order) whether from payments thereon or proceeds of sale thereof (collectively, the "Cash Collateral") up to an aggregate amount of $8,200,000 (the "Aggregate Cap") inclusive of the amount of the Senior Credit Facility Collateral used by the Debtors during the period from October 16, 2010 through the Petition Date. | Interim Order, ¶6(b) |
| **Adequate Protection** | The Administrative Agent and the Senior Lenders shall receive the following Adequate Protection: | Interim Order, ¶7 |

---

[2] This summary of the terms and conditions of the use of Cash Collateral is intended to assist the Court in understanding key aspects of the arrangement and is qualified in its entirety by reference to the proposed form of Interim Order, as it may be modified by the proposed form of Final Order. Defined terms used herein, but not defined herein, shall have the meanings ascribed in the Interim Order.

- Adequate Protection Liens: replacement security interest in and liens upon the Senior Credit Facility Collateral and any proceeds thereon (regardless of whether such Senior Credit Facility Collateral and any proceeds thereon are acquired prepetition or postpetition) with the same priority and rights as the liens that secured the Senior Credit Facility Debt (it being understood that, subject only to and effective upon entry of the Final Order, the Replacement Liens and Cash Collateral shall include any and all recoveries of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code) to the extent of the post-petition diminution in value of the Remaining Collateral;

- Section 507(b) Claims. administrative superpriority claims as provided for in section 507(b) of the Bankruptcy Code with priority in payment over any and all other administrative expenses in the Chapter 11 Cases to the extent of the post-petition diminution in value of the Remaining Collateral;

- Financial Reporting: the Debtors shall provide the Administrative Agent and the Senior Lenders with reports in compliance with the provisions of the Interim Order; and

- Compliance with the Restructuring Facilitation Agreement: the Debtors shall comply with the terms and conditions of the Restructuring Facilitation Agreement to the extent that failure to do so would constitute a Termination Event thereunder. This includes making best efforts to meet

| | | |
|---|---|---|
| | various deadlines for the plan confirmation process. | |
| **Right to Credit Bid** | The Administrative Agent is entitled to credit bid, on behalf of the Senior Lenders, at prices determined after consultation with the Debtors, for any Senior Credit Facility Collateral proposed to be sold by the Debtors in accordance with section 363 of the Bankruptcy Code, pursuant to a plan of liquidation or otherwise. | Interim Order, ¶8 |
| **Effect of Stipulation on Third Parties** | Each stipulation, admission and agreement contained in the Interim Order, including, without limitation, in the C-BASS Stipulations (which includes releases of the Administrative Agent and the Senior Lenders), shall be binding upon the Debtors and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Lender Claims (as defined in the Interim Order) as of the date of execution of the Interim Order. Each stipulation, admission and agreement contained in the Interim Order, including, without limitation, the C-BASS Stipulations, shall also be binding upon all other parties in interest, including, without limitation, any committee appointed pursuant to section 1102 of the Bankruptcy Code (each, a "Committee"), under all circumstances and for all purposes, except with respect to the stipulations, admissions and agreements with respect to the Senior Credit Facility, the Senior Credit Facility Debt and the Pre-Petition Security Interests, including, the C-BASS Stipulations to the extent that (i) a party in interest has timely and properly filed an adversary proceeding or contested matter asserting a Lender Claim with respect to any of the C-BASS Stipulations by no later than the earlier of (1) 90 days from the date hereof and (2) 60 days after the entry of an order of this Court approving the relief granted herein on a final basis and (ii) there is a final order in favor of the plaintiff sustaining such Lender Claim. | Interim Order, ¶11 |

| **Limitation on Use of Senior Facility Collateral** | No Senior Credit Facility Collateral may be used to (a) object to the enforceability of or any amounts due under or liens or claims due under the Senior Credit Facility or granted under the Interim Order; (b) to assert any claims or causes of action against the Administrative Agent, any Senior Lender, and any of their respective agents, affiliates, representatives, attorneys or advisors; (c) to prevent, hinder or otherwise delay the assertion, enforcement or realization by the Administrative Agent on any Senior Credit Facility Debt in accordance with the Interim Order; (d) to assert or prosecute any avoidance actions under chapter 5 of the Bankruptcy Code against the Administrative Agent or any Senior Lender or their respective affiliates, representatives, attorneys or advisors in connection with matters related to the Senior Credit Facility, the Senior Credit Facility Debt or the Pre-Petition Security Interests; or (e) seek to modify any of the rights granted to the Administrative Agent and the Senior Lenders under the Interim Order or under the Senior Credit Facility; *provided* that any Committee may use Senior Credit Facility Collateral to investigate validity, priority and extent of the Pre-Petition Security Interests at an aggregate expense for all such investigations not to exceed $100,000. | Interim Order, ¶12 |
|---|---|---|
| **Modification of the Automatic Stay** | • Modified to permit the Administrative Agent and the Senior Lenders to (i) perform all acts, execute all instruments and documents that may be required in connection with their performance of their obligations under the Interim Order, and (ii) to continue any sale, settlement, re-registration, transfer or related processes in connection with any Senior Credit Facility Collateral sold or otherwise transferred pursuant to an exercise of rights and remedies under the Senior Credit Facility prior to the Petition Date; and<br><br>• Modified to permit the Administrative Agent and the Senior Lenders to | Interim Order, ¶13 |

| | | |
|---|---|---|
| | exercise certain remedies upon the occurrence of a Termination Event. Enforcement of remedies as to Senior Credit Facility Collateral is subject to five (5) business days' notice. | |
| **Termination Events** | Any of the following shall constitute a termination event with respect to the Interim Order (each, a "Termination Event"):<br><br>• any of the Administrative Agent, the Senior Lenders or the Released Parties is at any time the subject of any Lender Claim;<br><br>• appointment of an interim or permanent trustee or an examiner with expanded powers relating to the operations of or overseeing the Debtors' bankruptcy cases;<br><br>• dismissal of any of the Debtors' bankruptcy cases or conversion of any of the Debtors' bankruptcy cases to a case or cases under chapter 7 of the Bankruptcy Code;<br><br>• the Restructuring Facilitation Agreement terminates in accordance with its terms;<br><br>• the failure by any Debtor to comply with its obligations under the Restructuring Facilitation Agreement or the Interim Order;<br><br>• any Debtor pays, or makes or supports a motion to pay, directors, officers or employees of any Debtor salary or bonus amounts that, in the aggregate among all Debtors, exceeds $2,061,000, exclusive of amounts reimbursed by third parties not affiliated with any Debtor;<br><br>• the failure for whatever reason of the | Interim Order, ¶14(a) - (l) |

| | | |
|---|---|---|
| | Bankruptcy Court to approve the relief granted herein on a final basis (with only such modifications that are acceptable to the Administrative Agent in its sole discretion in consultation with the Oversight Committee) on or before the date that is 30 calendar days after the Petition Date;<br><br>• the reversal, or vacatur, or amendment, or supplement or other modification without the prior consent of the Administrative Agent of the Interim Order;<br><br>• the Debtors fail to file and diligently pursue a plan of liquidation that is a Qualifying Plan;<br><br>• any Debtor proposes, supports or files with the Bankruptcy Court a plan of reorganization or liquidation that is not a Qualifying Plan;<br><br>• the failure to consummate a Qualifying Plan by the date that is 150 days after the Petition Date; or<br><br>• the occurrence and continuation of any "Events of Default" under paragraph 16(h) or (j) of the Senior Credit Agreement. | |
| **Waiver of Section 506(c)** | Other than the use of Senior Credit Facility Collateral as expressly set forth in the Interim Order, no administrative costs or expenses shall be charged against or recovered from the Senior Credit Facility Collateral pursuant to section 506(c) of the Bankruptcy Code. For the avoidance of doubt, amounts within the Aggregate Cap may be used, inter alia, to (i) pay expenses of any chapter 7 trustee and (ii) pay any U.S. Trustee fees due and owing in connection with these Chapter 11 Cases. | Interim Order, ¶15 |

### III. Jurisdiction, Venue and Predicates for Relief

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the *Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York* dated July 10, 1984 (Ward, Acting C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The predicates for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2.

### IV. Relief Requested and Basis for Relief

10. As noted above, by this Motion, the Debtors respectfully request entry of (i) the Interim Order (a) authorizing the limited use of the Senior Lenders' Cash Collateral pursuant to the terms of the Interim Order, (b) granting adequate protection to the Senior Lenders in respect of their interests of the Senior Credit Facility Collateral and for claims arising from the diminution of value of the Senior Lenders' collateral from the Debtors' use of the Cash Collateral, and (c) a Final Hearing to consider entry of the Final Order.

#### A. The Use of the Cash Collateral Should be Approved

11. As noted above, the Participant Lenders and the Administrative Agent have consented to the Debtors' use of Cash Collateral subject to the following: (a) the limitation on the use of Cash Collateral in accordance with the terms of the Cash Collateral Orders, (b) the grant of Adequate Protection as described herein, and (c) the potential termination of the authority to use Cash Collateral upon the occurrence of certain events.

12. It is essential to the Debtors' efforts to maximize the value of their estates that they obtain authority to use the Cash Collateral. The reasons supporting the Debtors' need to use

Cash Collateral during the course of the Debtors' Chapter 11 Cases are compelling. As the Debtors have extremely limited funds, use of the Cash Collateral is required to fund the day-to-day operating expenses of the Debtors, including payments to remaining employees and other payments that are essential to sustaining the value of the Debtors' assets during the wind-down of their estates. Indeed, absent the use of the Cash Collateral, the Debtors believe and submit the value of the Debtors' assets will quickly erode. Therefore, authorization to use the Cash Collateral pending the Final Hearing is in the best interests of the Debtors, their estates and their creditors.

13. For the reasons noted above, the Debtors have determined, in the exercise of their sound business judgment, that they require the use of Cash Collateral to maximize the value of their assets for the benefit of all of their constituents, and the payment of the costs and expenses of administering these estates.

### B. Section 363 of the Bankruptcy Code Authorizes the Debtors' Use of Cash Collateral and the Interests of the Senior Lenders are Adequately Protected

14. Because not all of the Senior Lenders are participating in the RFA they cannot be deemed to have consented to the use of Cash Collateral contemplated by the Cash Collateral Orders. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use, sell or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Further, section 363(e) of the Bankruptcy Code provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of

such interest." 11 U.S.C. § 363(e). Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (a) lump sum or periodic cash payments to the extent that such use will result in a decrease in value of such entity's interest in the property; (b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property; and (c) such other relief as will result in the realization by the entity of the indubitable equivalent of such entity's interest in the property. *See* 11 U.S.C. § 361.

15. The focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and protect the secured creditor from the diminution in the value of its collateral during the reorganization process. *See, e.g., In re WorldCom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy"); *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) ("[t]he purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy") (citation omitted); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (purpose of adequate protection is "to safeguard the secured creditor from diminution in value of its interest" during the Chapter 11 proceeding).

16. What constitutes adequate protection must be evaluated on a case-by-case basis. *See, e.g., Resolution Trust Corp. v. Swedeland Dev. Group Inc.) (In re Swedeland Dev. Group Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Martin*, 761 F.2d 472, 474, (8th Cir. 1985); *In re*

*Mosello*, 195 B.R. at 289; *In re Realty Southwest Assocs.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992).

17. Courts have also authorized similar relief in other chapter 11 cases where, for example, the debtor seeks to use cash collateral to maintain property of the estate. *See, e.g.*, *In re 499 W. Warren Street Assocs., Ltd. P'ship.*, 142 B.R. 53, 58 (Bankr. N.D.N.Y. 1992) (allowing the use of cash collateral to maintain property); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (recognizing the debtor's use of cash collateral to operate and maintain an office building would serve to protect or enhance the value of the building which, in turn, would protect the collateral covered by the lender's mortgage).

18. As more fully set forth in the Interim Order, as adequate protection for the use of the Senior Lenders' Cash Collateral, and to compensate the Senior Lenders for any diminution in value of the Senior Credit Facility Collateral, the Debtors propose to provide the Senior Lenders, with *inter alia,* (a) replacement security interest in and liens upon the proceeds of, and any property received from any of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code; (b) administrative superpriority claims as provided for in section 507(b) of the Bankruptcy Code with priority in payment over any and all other administrative expenses in the Chapter 11 Cases; and (c) access to written financial information on a periodic basis.

19. The terms and conditions on which the Debtors may use Cash Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code. If the Interim Order is entered, the Debtors will have sufficient liquidity to maintain the value of their estates for the benefit of all constituents and to pay the operating costs and expenses of

these Chapter 11 Cases. At the same time, the Senior Lenders will be adequately protected for consenting to such use. Therefore, the Debtors believe and respectfully submit that the use of Cash Collateral on the terms set forth in the attached proposed form of Interim Order provides the Senior Lenders with adequate protection and is in the best interests of the Debtors, their estates and all parties in interest and therefore should be authorized by the Court.

  **C. Approval of Use of Cash Collateral on an Interim Basis Is Necessary to Prevent Immediate and Irreparable Harm**

20. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced until earlier than fourteen (14) days after the service of such motion. *See* Fed. R. Bankr. P. 4001(b)(2). Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the Motion and authorize the use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing. *See id.*

21. Pursuant to Bankruptcy Rule 4001(b), the Debtors request that the Court conduct an expedited preliminary hearing on the Motion and (i) authorize the Debtors to use the Cash Collateral of the Senior Lenders to (a) maintain and finance the Debtors' efforts to liquidate under chapter 11 of the Bankruptcy Code, and (b) avoid immediate and irreparable harm and prejudice to the Debtors' estates and all parties in interest, and (ii) schedule the Final Hearing on the relief requested herein.

22. Absent authorization from the Court to use the Cash Collateral on an interim basis pending the Final Hearing, the Debtors will be immediately and irreparably harmed. As set forth above and in the First Day Declaration, the Debtors' ability to preserve value for the benefit of all constituents is inextricably tied to funding the orderly liquidation and wind-down of their estates. Without the immediate liquidity provided by the use of the Cash Collateral, the Debtors

will suffer a precipitous loss of value to the detriment of all parties in interest, that constitutes an immediate and irreparable harm to the Debtors and their estates, with disastrous consequences for the Debtors, their estates and their creditors. The Interim Order seeks approval to use Cash Collateral only in the amount necessary to sustain the Debtors' operations prior to the Final Hearing.

### D. Request for a Final Hearing

23. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court set a date that is no longer than 14 days after the entry of the Interim Order as a Final Hearing for consideration of entry of the Final Order.

24. The Debtors request that they be authorized to serve a copy of the endorsed Interim Order, which fixes the date and time for the filing of objections, if any, by first class mail upon the Notice Parties (defined below) within three (3) business days of the entry of the Interim Order on the Court's docket. The Debtors further request that the Court consider such notice of the Final Hearing to be sufficient notice under the Bankruptcy Rules and Local Rules.

### V. Notice

25. Notice of this Motion has been provided to: (a) the office of the United States Trustee for the Southern District of New York; (b) counsel to the Administrative Agent for the Senior Lenders, Davis Polk & Wardwell LLP; (c) the creditors holding the thirty (30) largest unsecured claims against the Debtors' estates on a consolidated basis, as identified in the Debtors' chapter 11 petitions; and (d) all parties that have filed a notice of appearance or have requested service in these Chapter 11 Cases (collectively, the "Notice Parties"). In light of the nature of the relief requested herein and the potential harm to the Debtors' estates if the relief

requested herein is not granted, the Debtors respectfully submit that no other or further notice need be provided.

## VI. No Prior Request

26. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Interim Order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested herein, (b) enter a Final Order granting the relief requested herein on a final basis, and (c) grant to the Debtors such other and further relief as the Court may deem just and proper.

Dated: November 12, 2010  
      New York, New York

Respectfully submitted,

*/s/ Peter S. Partee, Sr.*  
Peter S. Partee, Sr.  
Jack A. Molenkamp  
Andrew Kamensky (*pro hac vice* admission pending)  
Scott H. Bernstein  
HUNTON & WILLIAMS LLP  
200 Park Avenue, 53rd Floor  
New York, New York 10166-0136  
(212) 309-1000

*Proposed Attorneys for Debtors and Debtors-in-Possession*