**EXHIBIT A**

**PROPOSED FORM OF INTERIM ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                                    )
In re:                                              )       Chapter 11
                                                    )
CREDIT-BASED ASSET SERVICING                        )       Case No. 10-16040 (ALG)
AND SECURITIZATION LLC, et al.,                     )
                                                    )       Joint Administration Requested
                              Debtors.[1]           )
                                                    )
_____               )

### STIPULATION AND INTERIM ORDER PURSUANT TO SECTIONS 105(a), 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 GRANTING ADEQUATE PROTECTION TO PRE-PETITION SENIOR LENDERS

Upon the motion (the "Motion")[2] of the debtors and debtors-in-possession (the

"Debtors") in the above-captioned cases (the "Chapter 11 Cases"), pursuant to sections 105(a),

361 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy

Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and

the Local Bankruptcy Rules seeking entry of an interim order (this "Interim Order") granting

adequate protection to the Senior Lenders (as defined below); and the Court having reviewed the

Motion and the *Declaration of Andrew Rickert in Support of Chapter 11 Petitions and First Day

Motions*; and the Court having determined that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors and other parties in interest; [and no

objection to the relief requested in the Motion having been made]; and upon the record herein

and at the hearing held by this Court on November 16, 2010; and due and appropriate notice of

the Motion and the relief requested therein having been served by the Debtors on the Notice

---

[1]        The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment
Management LLC, LLC., NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish
Management Group LLC.

[2]        Capitalized terms used but not defined herein shall have the meaning given to such terms in the Motion.

Parties described in the Motion; and no other or further notice being necessary; and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Disposition*. The relief requested in the Motion is hereby granted as set forth herein.

2. *Jurisdiction and Venue*. This Court has core jurisdiction over the Chapter 11 Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. *Notice*. Under the circumstances, the notice given by the Debtors of the Motion and the relief requested therein constitutes due and sufficient notice thereof, and complies with Bankruptcy Rules 2002 and 4001(d) and Local Bankruptcy Rules 2002-1, 4001-2 and 9006-1, and no further notice is necessary or required.

4. *Debtors' Stipulations*. Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 11 hereof), the Debtors admit, stipulate, and agree (collectively, the "C-BASS Stipulations") that:

(a) as of the filing of the Debtors' chapter 11 petitions (the "Petition Date"), the Debtors other than C-BASS Credit Corp. and Sunfish Management Group LLC (such Debtors, collectively, the "Obligor Debtors") were indebted and liable to the Senior Lenders (as defined below) pursuant to the Credit Agreement dated as of June 25, 2007 among the Debtors, the lenders from time to time party thereto (the "Senior Lenders") and JPMorgan Chase Bank, N.A., as administrative agent (in such capacity, the "Administrative Agent") (as heretofore amended, supplemented or otherwise modified, the "Senior Credit Agreement," and, together

with all security and other ancillary documents entered into in connection therewith, the "Senior Credit Facility"), in the aggregate principal amount of approximately $170 million, pursuant to, and in accordance with the terms of, the Senior Credit Agreement, plus interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Senior Credit Agreement), charges and other obligations incurred in connection therewith as provided in the Senior Credit Agreement (collectively, the "Senior Credit Facility Debt") secured by liens and security interests (the "Senior Credit Facility Security Interests") in all or substantially all of the Obligor Debtors' property (the "Senior Credit Facility Collateral"), all as set forth in the Senior Credit Facility;

(b)     the Senior Credit Facility Debt is owed jointly and severally by the Obligor Debtors without defense, counterclaim or offset of any kind, and the Senior Credit Facility Debt constitutes the legal, valid and binding obligation of the Obligor Debtors, enforceable in accordance with the terms of the Senior Credit Facility;

(c)     the Senior Credit Facility Security Interests granted pursuant to and in connection with the Senior Credit Facility, including, without limitation, all security agreements, pledge agreements, and other security documents executed by any of the Obligor Debtors in favor of the Administrative Agent or any Senior Lender are (i) valid, binding, perfected and enforceable liens and security interests in the real and personal property described in the Senior Credit Facility and (ii) not, pursuant to the Bankruptcy Code or other applicable law, subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as such term is defined in the Bankruptcy Code, "Claim") of any kind;

(d)     no portion of the Senior Credit Facility Debt or any payments made to the Administrative Agent or the Senior Lenders (in their respective capacities) or applied to the obligations owed under the Senior Credit Facility prior to the Petition Date is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or Claim of any kind pursuant to the Bankruptcy Code or other applicable nonbankruptcy law;

(e)     each exercise of rights and remedies on, and public sale of, Senior Credit Facility Collateral by the Administrative Agent prior to the date hereof was conducted in accordance with the Senior Credit Facility, the Uniform Commercial Code and in a commercially reasonable manner, and the Debtors disclaim any beneficial ownership of, legal or equitable title in, or any other rights with respect to, any such Senior Credit Facility Collateral, and substantially all proceeds thereof were applied to the obligations owed under the Senior Credit Facility, or used or retained to pay related fees and expenses reimbursable thereunder, and are not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or Claim of any kind pursuant to the Bankruptcy Code or other applicable nonbankruptcy law; and

(f)     each Debtor, on behalf of itself and its successors and assigns, jointly and severally releases, acquits and forever discharges the Administrative Agent and each of the Senior Lenders (in each case, in any capacity), and their respective subsidiaries, parents, affiliates, officers, directors, managers, employees, agents, advisors, attorneys, successors and assigns, both present and former (collectively, the "Released Parties") from any and all manner of actions, causes of action, suits, debts, controversies, damages, judgments, executions, rights, claims (whether arising at law or in equity, including, without limitation, any recharacterization,

4

subordination, avoidance or other Claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law or any Lender Claim (as defined below)) and demands whatsoever, whether known or unknown, whether now existing or hereafter arising, whether asserted or unasserted, in contract, tort, law or equity that any of the Debtors has or may have against the Administrative Agent, any of the Senior Lenders and/or any of the other Released Parties.

5. *Findings of Fact.* The Court hereby finds that:

(a) good cause has been shown for the entry of this Interim Order;

(b) the terms of this Interim Order and the use of Senior Credit Facility Collateral are fair and reasonable, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties;

(c) the terms of the use of Senior Credit Facility Collateral have been negotiated in good faith and at arms' length among the Debtors, the Administrative Agent and the Senior Lenders;

(d) the Debtors have an immediate need to use Senior Credit Facility Collateral to permit, *inter alia*, an orderly liquidation of their estates, and immediate use of Senior Credit Facility Collateral is vital to the preservation of the value of the Debtors and their estates for the benefit of all of their creditors;

(e) absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed; and

(f) entry of this Interim Order and authorization of the use of Senior Credit Facility Collateral, subject to the terms and conditions herein, is therefore in the best

interests of the Debtors' estates and all parties in interest, and consistent with the Debtors' fiduciary duties.

6.     *Use of Senior Credit Facility Collateral.*  (a) The Debtors shall conduct an orderly liquidation and sale of all Senior Credit Facility Collateral not already in the form of cash in a manner that the Debtors, in their reasonable discretion, believe likely to maximize the value thereof; *provided* that, except as set forth in paragraph 8 hereof or expressly agreed in writing by the Administrative Agent in its sole discretion in consultation with the Oversight Committee (as defined below), all such sales shall be for cash; *provided further* that all such sales shall be on an arms-length basis after a full and reasonable auction process for fair market value, which auction process shall be acceptable to the Administrative Agent in its reasonable discretion in consultation with the Oversight Committee (as defined below), and approved either pursuant to further orders of this Court under section 363 of the Bankruptcy Code or pursuant to a Qualifying Plan (as defined below); *provided further* that the Debtors shall not sell any Senior Credit Facility Collateral to any entity or person affiliated in any way with any officer, director or employee of any of the Debtors without the prior approval of the Administrative Agent and a majority in number of members from time to time of the group of Senior Lenders organized by the Administrative Agent pursuant to the Sixth Forbearance and Standstill Agreement dated as of January 15, 2010 among C-BASS and certain of its subsidiaries, the Administrative Agent and the Senior Lenders party thereto, which members shall include, for the avoidance of doubt, the Administrative Agent (such group of Senior Lenders, the "Oversight Committee," and such majority in number of members of the Oversight Committee, the "Majority OC Members"); *provided further* that the Administrative Agent's and the Senior Lenders' liens and security interests with respect any Senior Credit Facility Collateral sold pursuant to this paragraph shall

attach to the proceeds of such Senior Credit Facility Collateral to the same extent and with the same validity and priority.

(b)        The Debtors are entitled to use, subject to the terms and conditions herein and solely prior to the occurrence of a Termination Event (as defined below), any cash received in respect of the Senior Credit Facility Collateral whether from payments thereon or proceeds of sale thereof (collectively, "<u>Cash Collateral</u>") up to an aggregate amount of $8,200,000 (the "<u>Aggregate Cap</u>") inclusive of the amount of Senior Credit Facility Collateral used by the Debtors during the period from October 16, 2010 through the Petition Date.

(c)        Any Cash Collateral received by any Debtor that, together with all Cash Collateral then held by any Debtor or previously used by any Debtor during the period beginning October 16, 2010, exceeds the Aggregate Cap shall be, within three business days of receipt thereof, remitted to the Administrative Agent to be applied to the Senior Credit Facility Debt in accordance with the Senior Credit Facility. Solely for the purposes of calculating how much of the Aggregate Cap has been used, the Debtors' interests in the unapplied balance of the advance payment retainers held by Protiviti and Hunton & Williams LLP as of October 16, 2010 in connection with their engagement by the Debtors shall be treated as if such interests constituted Cash Collateral previously used by the Debtors during the period beginning on October 16, 2010.[3]

7.        *Adequate Protection*.  The Administrative Agent and Senior Lenders are entitled, pursuant to sections 361 and 363 of the Bankruptcy Code, to adequate protection of their interest

---

[3] The aggregate unapplied balance of the advance payment retainers held by Protiviti and Hunton & Williams LLP as of October 16, 2010 in connection with their engagement by the Debtors was $3.515 million, which amount, for the avoidance of doubt, shall be used for the purposes of calculating of how much of the Aggregate Cap has been previously used by the Debtors during the period beginning on October 16, 2010.

in the Senior Credit Facility Collateral for any post-petition diminution in the value of the Administrative Agent's or the Senior Lenders' interest in the Senior Credit Facility Collateral, including, without limitation, any such diminution resulting from the sale or use by the Debtors of the Senior Credit Facility Collateral (or other decline in value of the Senior Credit Facility Collateral to the extent not prohibited by applicable law) and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  As adequate protection, the Administrative Agent and Senior Lenders are hereby granted the following (collectively, the "<u>Adequate Protection Obligations</u>"):

(a)     the Administrative Agent and the Senior Lenders are hereby granted replacement security interests in and liens upon the Senior Credit Facility Collateral and any proceeds thereon (regardless of whether such Senior Credit Facility Collateral and any proceeds thereof are acquired pre-petition or post-petition) with the same priority and right as the liens that secured the Senior Credit Facility Debt (the "<u>Replacement Liens</u>"), effective and perfected upon the date hereof without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements or other agreements or the filing of any financing statements (it being understood that, subject only to and effective upon entry of the final order, the Replacement Liens and Cash Collateral shall include any and all recoveries on the Debtors' claims and causes of action under Sections 502(d), 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code against any party (such claims and causes of action, the "<u>Avoidance Actions</u>"), and that the Administrative Agent and the Senior Lenders shall be granted a first priority security interest in and a lien upon the proceeds of, and any property received from (whether by judgment, settlement or otherwise) any of the Debtors' Avoidance Actions, in each case effective and

perfected upon the date of such final order without the necessity of the execution by the Debtors of any agreement or the filing of any financing statements). Such security interests and liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates pursuant to Section 551 of the Bankruptcy Code, (ii) any liens or security interests arising after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or any lien or security interest granted under Section 364(d) of the Bankruptcy Code or (iii) any intercompany or affiliate liens of the Debtors;

(b) the Administrative Agent and the Senior Lenders are hereby granted administrative superpriority claims as provided for in section 507(b) of the Bankruptcy Code that shall be allowed claims against each Debtor (jointly and severally) with priority over any and all administrative expenses and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b) or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment;

(c) the Debtors shall provide written reports to the Administrative Agent and Senior Lenders no less frequently than the third business day of each month for the duration of the Bankruptcy Cases detailing (i) the amount of the Senior Credit Facility Cash Collateral used by each of the Debtors and the uses therefor (A) during such immediately

preceding calendar month and (B) on a cumulative basis from October 16, 2010 to the end of such immediately preceding calendar month, (ii) the account balances for each of the Debtors' cash accounts as of the end of the immediately preceding calendar month and (iii) detailed collections by asset and in the aggregate on account of all Senior Credit Facility Collateral both during such immediately preceding calendar month and on a cumulative basis from October 16, 2010 to the end of such immediately preceding calendar month;

(d)     the Debtors shall (i) permit the Administrative Agent and its professionals (including, without limitation, the Administrative Agent's financial advisor), during regular business hours and upon reasonable notice, to visit and inspect the premises of the Debtors, meet with representatives of the Debtors, review all books and records of the Debtors and conduct quarterly (or more frequently if reasonably deemed necessary by the Administrative Agent) examinations of the Senior Credit Facility Collateral, (ii) provide reasonable access to the management of the Debtors for meetings regarding the status of the Senior Credit Facility Collateral and (iii) consult with the Administrative Agent and its professionals on any sales or auctions of the Senior Credit Facility Collateral;

(e)     the Debtors shall continue to comply with the terms of the Restructuring Facilitation Agreement dated as of September 20, 2010 among C-BASS, certain C-BASS subsidiaries, JPMorgan Chase Bank, N.A., as administrative agent under the Senior Credit Facility, and the lenders under the Senior Credit Facility parties thereto (the "Restructuring Facilitation Agreement"), except to the extent that any failure to so comply would not constitute a Termination Event within the meaning of such term under the Restructuring Facilitation Agreement; and

(f)     the Debtors shall indefeasibly remit to the Administrative Agent any proceeds or payments in accordance with paragraph 6(c) hereof.

8.      *Credit Bidding by the Senior Lenders.*  The Administrative Agent is entitled to credit bid, on behalf of the Senior Lenders, at prices determined after consultation with the Debtors for any Senior Credit Facility Collateral proposed to be sold by the Debtors in accordance with section 363 of the Bankruptcy Code, pursuant to a plan of liquidation or otherwise.

9.      *Reservation of Rights of Senior Lenders.*  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Administrative Agent and the Senior Lenders. However, the Administrative Agent and the Senior Lenders may upon a material change in circumstances request further or different adequate protection, and the Debtors or any other party may contest any such request.  Nothing contained in this Interim Order shall impair or modify any rights, claims or defenses available at law or in equity to the Administrative Agent, any Secured Lender or, except as provided in this Interim Order, the Debtors.

10.     *Preservation of Rights Granted Under the Interim Order.*

(a)     Unless the Adequate Protection Obligations shall have been fulfilled in all respects, the Debtors shall not seek, and it shall constitute a Termination Event (as defined below) if the Debtors seek or support (i) any modifications of this Interim Order without the prior written consent of the Administrative Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the Administrative Agent or (ii) an order converting any of the Chapter 11 Cases to a case or cases under chapter 7 of the Bankruptcy

Code, dismissing any of the Chapter 11 Cases, or appointing a trustee or an examiner with expanded powers in any of the Chapter 11 Cases.

(b)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect:

(i)    the validity of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Administrative Agent of the effective date of such reversal, stay, modification or vacatur, or the validity of any payments made in respect thereof; or

(ii)    the validity or enforceability of any lien or priority authorized or created hereby or with respect to Adequate Protection Obligations.

(c)    Except as expressly provided in this Interim Order, all other rights and remedies of the Administrative Agent and the Senior Lenders granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by:

(i)    the entry of an order converting any of the Chapter 11 Cases to a case or cases under chapter 7;

(ii)    dismissal of any of the Chapter 11 Cases;

(iii)    the entry of an order appointing a trustee or an examiner with expanded powers in any of the Chapter 11 Cases; or

(iv)    the confirmation of a plan of reorganization or liquidation in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations.

(d)     The terms and provisions of this Interim Order shall continue in any superseding case or cases under chapter 7 of the Bankruptcy Code, and all other rights and remedies of the Administrative Agent granted by the provisions of this Interim Order shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full or otherwise satisfied in accordance with an order of a court of competent jurisdiction over such superseding chapter 7 case or cases.

11.     *Effect of Stipulations on Third Parties*.    (a)    Each stipulation, admission and agreement contained in this Interim Order, including, without limitation, in the C-BASS Stipulations, shall be binding upon the Debtors and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Lender Claims (as defined below) as of the date of execution of this Interim Order.    Each stipulation, admission and agreement contained in this Interim Order, including, without limitation, the C-BASS Stipulations, shall also be binding upon all other parties in interest, including, without limitation, any committee appointed pursuant to section 1102 of the Bankruptcy Code (each, a "Committee"), under all circumstances and for all purposes, except with respect to the stipulations, admissions and agreements with respect to the Senior Credit Facility, the Senior Credit Facility Debt and the Senior Credit Facility Security Interests, including the C-BASS Stipulations to the extent that (i) a party in interest has timely and properly filed an adversary proceeding or contested matter asserting a Lender Claim with respect to any of the C-BASS Stipulations by no later than the earlier of (1) 90 days from the date hereof and (2) 60 days after the entry of an order of this Court approving the relief granted herein on a final basis and (ii) there is a final order in favor of the plaintiff sustaining such Lender Claim.

(b)     The success of any particular Lender Claim shall not alter the binding effect on each party in interest of any stipulation or admission not subject to such Lender Claim. Except to the extent (but only to the extent) a timely and properly filed adversary proceeding or contested matter asserting a Lender Claim as provided in the immediately preceding paragraph is sustained in a final order, (i) the Senior Credit Facility Debt shall constitute allowed claims, not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaims, defense or other Claim of any kind pursuant to the Bankruptcy Code or other applicable law, for all purposes in any Debtor's chapter 11 case and any subsequent chapter 7 cases, (ii) the Senior Credit Facility Debt and the Pre-Petition Security Interests shall be deemed to have been, as of the Petition Date, legal, valid, binding perfected and enforceable liens and security interests not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaims, defense or other Claim of any kind and (iii) the Senior Credit Facility Debt (and any payments or recoveries thereon) and the Pre-Petition Security Interests shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained herein, including the C-BASS Stipulations, shall nonetheless remain binding and preclusive on any Committee and on any other person or entity, except to the extent that such findings and admissions are expressly and successfully challenged in such adversary proceeding or contested matter.

(c)     Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any

14

cause of action belonging to the Debtors or their estates, including, without limitation, Claims,

Lender Claims or defenses with respect to the Senior Credit Facility, the Senior Credit Facility

Debt or the Senior Credit Facility Security Interests.

12. *Limitation on Use of Senior Credit Facility Collateral*. No Senior Credit Facility

Collateral may be used for any of the following (each, a "Lender Claim"): (a) to object, contest

or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount

due under the Senior Credit Facility, or the liens or claims granted under this Interim Order or

the Senior Credit Facility, (b) to assert any claim or cause of action against the Administrative

Agent or any Senior Lender (in each case, in any capacity) or its agents, affiliates,

representatives, attorneys or advisors, (c) to prevent, hinder or otherwise delay the assertion,

enforcement or realization by the Administrative Agent on any Senior Credit Facility Debt in

accordance with this Interim Order, (d) to assert or prosecute any action for preferences,

fraudulent conveyances, other avoidance claims or any other any Claims, counterclaims or

causes of action, objections, contests or defenses against the Administrative Agent or any Senior

Lender or their respective affiliates, representatives, attorneys or advisors in connection with

matters related to the Senior Credit Facility, the Senior Credit Facility Debt or the Pre-Petition

Security Interests or (e) to seek to modify any of the rights granted to the Administrative Agent

and the Senior Lenders hereunder or under the Senior Credit Facility; *provided* that any

Committee may use Senior Credit Facility Collateral to investigate validity, priority and extent of

the Pre-Petition Security Interests at an aggregate expense for all such investigations not to

exceed $100,000.

13. *Modification of Automatic Stay*. Upon entry of this Interim Order, the automatic

stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate

all of the terms and provisions of this Interim Order, including, without limitation, to permit the Debtors to incur the liabilities and obligations and grant security interests and liens to the Administrative Agent and the Senior Lenders under this Interim Order and to permit the Administrative Agent, on behalf of the Senior Lenders, to take any steps it may determine to be necessary or desirable to evidence the creation of or to perfect such security interest and to deliver a notice of termination hereunder or under the Restructuring Facilitation Agreement. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Administrative Agent and the Senior Lenders (and, solely with respect to clause (i) below, any applicable purchasers or transferees) (i) to continue any sale, settlement, re-registration, transfer or related processes in connection with any Senior Credit Facility Collateral sold or otherwise transferred pursuant to an exercise of rights and remedies under the Senior Credit Facility prior to the Petition Date, and any trustees, custodians and transfer agents for, or similar parties with respect to, any such Senior Credit Facility Collateral and any purchasers thereof and transferees thereto are authorized and directed to rely on this Interim Order in connection with any such sale, settlement, re-registration, transfer or related process and (ii) (A) immediately upon the occurrence of a Termination Event (as defined below) specified in clauses 14(b), 14(c) or 14(k) and hereof and (B) upon five business days' notice to the Debtors (with a copy to counsel to any Committee and to the United State Trustee) upon the occurrence of a Termination Event specified in clauses 14(a), 14(d), 14(i)a(e), 14(f), 14(g), 14(h), 14(i), 14(j) or 14(l) hereof, to exercise all rights and remedies against the Senior Credit Facility Collateral provided for in this Interim Order or the Senior Credit Facility or applicable nonbankruptcy law (including, without limitation, the right to set off against accounts maintained by the Debtors with the Administrative Agent or any Senior Lender or any affiliate thereof). In

any hearing regarding any exercise of such rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, a Termination Event has occurred, and the Debtors hereby waive their rights to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of either the Administrative Agent or the Senior Lenders as set forth in this Interim Order or the Senior Credit Facility. In no event shall the Administrative Agent or the Senior Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Senior Credit Facility Collateral. The delay or failure to exercise rights and remedies under this Interim Order or the Senior Credit Facility by any of the Administrative Agent or Senior Lenders shall not constitute a waiver of any rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of this Interim Order or the Senior Credit Facility.

14. *Termination Events.* Any of the following shall constitute a termination event with respect to this Interim Order (each, a "Termination Event"):

(a) any of the Administrative Agent, the Senior Lenders or the Released Parties is at any time the subject of any Lender Claim, whether by any Debtor, any Committee or any other party with standing to do so (*provided* that any party that files a motion seeking such standing shall be deemed to have commenced such litigation, objections or similar action at the time such standing motion is filed);

(b) appointment of an interim or permanent trustee or an examiner with expanded powers relating to the operations of or overseeing the Debtors' bankruptcy cases;

(c) dismissal of any of the Debtors' bankruptcy cases or conversion of any of the Debtors' bankruptcy cases to a case or cases under chapter 7 of the Bankruptcy Code;

(d)     the Restructuring Facilitation Agreement terminates in accordance with its terms;

(e)     the failure by any Debtor to comply with any of its obligations under this Interim Order;

(f)     any Debtor pays, or makes or supports a motion to pay, directors, officers or employees of any Debtor salary or bonus amounts that, for the period beginning October 16, 2010 and in the aggregate among all Debtors, exceeds $2,061,000, exclusive of amounts reimbursed by third parties not affiliated with any Debtor;

(g)     the failure for whatever reason of the Bankruptcy Court to approve the relief granted herein on a final basis (with only such modifications that are acceptable to the Administrative Agent in its sole discretion in consultation with the Oversight Committee) on or before the date that is 30 calendar days after the Petition Date;

(h)     the reversal, or vacatur, or amendment, or supplement or other modification without the prior consent of the Administrative Agent of this Interim Order;

(i)     the Debtors fail promptly to file or diligently to pursue a plan of liquidation that (i) is proposed by the Debtors, (ii) is acceptable to the Administrative Agent and the Majority OC Members in their reasonable discretion, (iii) provides for customary releases, exculpations and injunctions for, *inter alia*, all officers and directors of the Debtors who hold those positions at any time during the Bankruptcy Cases from the Debtors' estates, all creditors that do not exercise the election to "opt-out" of such release (such creditors, the "Releasing Creditors") and the Senior Lenders, (iv) provides for customary releases, exculpations and injunctions for the Administrative Agent and the Senior Lenders in their respective capacities that are acceptable to the Administrative Agent and the Majority OC Members in their

reasonable discretion from the Debtors' estates and the Releasing Creditors, and (v) provides for an aggregate distribution to general unsecured creditors that are Releasing Creditors in an amount to be decided by the Debtors in their sole discretion that, together with all other Senior Credit Facility Collateral used by the Debtors on and after October 16, 2010, shall not exceed Aggregate Cap plus (A) 50% of any proceeds received by the Senior Lenders (in their respective capacities as such) on or before September 20, 2013 in excess of the principal amount owed under the Senior Credit Facility, if any, and (B) any proceeds or recoveries from avoidance actions (against parties other than the Administrative Agent and any Senior Lender in any capacity) and (vi) provides for no distribution to general unsecured creditors that are not Releasing Creditors (any such plan, a "Qualifying Plan");

(j)  any Debtor proposes, supports or files with the Bankruptcy Court a plan of reorganization or liquidation that is not a Qualifying Plan;

(k)  the failure to consummate a Qualifying Plan by the date that is 150 days after the Petition Date; or

(l)  the occurrence and continuation of any "Events of Default" under Paragraph 16(h) or (j) of the Senior Credit Agreement.

15.  *Waiver of section 506(c)*.  Other than the use of Senior Credit Facility Collateral as expressly set forth herein, no expenses of administration of any of the Debtors' bankruptcy cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Senior Credit Facility Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the Administrative Agent and no such consent shall be implied from any other action, inaction, or acquiescence by the

Administrative Agent or any Senior Lender.  For the avoidance of doubt, amounts within the Aggregate Cap may be used, *inter alia*, to (i) pay expenses of any chapter 7 trustee and (ii) pay any U.S. Trustee fees due and owing in connection with to these Chapter 11 Cases.

16.    *Effectiveness.*  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

17.    *Binding Effect; Successors and Assigns*.    The provisions of this Interim Order shall be binding upon all parties in interest in the Debtors' bankruptcy cases, including, without limitation, the Administrative Agent, the Senior Lenders, any Committee appointed in any of the Debtors' bankruptcy cases, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Administrative Agent, the Senior Lenders, and the Debtors and their respective successors and assigns, provided, however, that the Administrative Agent and the Senior Lenders shall have no obligation to permit the use of Senior Credit Facility Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  The terms and provisions of this Interim Order shall continue in any superseding case under chapter 7

of the Bankruptcy Code, and all other rights and remedies of the Administrative Agent granted by the provisions of this Interim Order shall continue in full force and effect.

18.     *Implementation.*   The Debtors are authorized, directed and empowered to take such actions as may be necessary and appropriate to implement the terms of this Interim Order.

19.     *Retention of Jurisdiction*. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Interim Order.

20.     *Final Hearing*.   A hearing to consider the relief granted herein on a final basis (the "<u>Final Hearing</u>") shall be held by this Court on [●] at [●] (prevailing Eastern time).   The Debtors shall, within three business days of the date hereof, transmit by first class mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the Notice Parties, to any party that has filed a request for notices with this Court as of the date hereof and to any Committee.   Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection with this Court and serve such objection, so that it is actually received by 4:00 pm (prevailing Eastern time) on [●], upon (a) counsel to the Debtors, Hunton & Williams LLP, 200 Park Avenue, 53rd Floor, New York, New York 10166, Attn: Peter S. Partee, Sr. (b) counsel to the Administrative Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New

York, New York 10017, Attn: Damian S. Schaible, (c) the United States Trustee, 33 Whitehall

Street, 21st Floor, New York, New York 10004, Attn: Susan Golden and (d) counsel to any

Committee.

Dated: New York, New York      **HUNTON & WILLIAMS LLP**
        November 12, 2010      200 Park Avenue, 53rd Floor
                                        New York, New York 10166-0136
                                        *Counsel to the Debtors*


                                        */s/ Peter S. Partee, Sr.*
                                        Peter S. Partee, Sr.


                                        **DAVIS POLK & WARDWELL LLP**
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        *Counsel to the Administrative Agent*


                                        */s/ Damian S. Schaible*
                                        Damian S. Schaible


                     **SO ORDERED** this __ day of
                     November, 2010


                     _____
                     THE HONORABLE ALLAN L. GROPPER
                     UNITED STATES BANKRUPTCY JUDGE