**Proposed Hearing Date and Time for Hearing on Approval of Bidding Procedures: 11/19/10 at 10:00 a.m. (prevailing Eastern Time)**
**Proposed Objection Deadline for Approval of Bidding Procedures: 11/18/10 at 4:00 p.m. (prevailing Eastern Time)**

**Proposed Hearing Date and Time for Hearing on Approval of Sale: 12/22/10 at 10:00 a.m. (prevailing Eastern Time)**
**Proposed Objection Deadline for Approval of Sale: 12/15/10 at 4:00 p.m. (prevailing Eastern Time)**

Peter S. Partee, Sr.
Jack A. Molenkamp
Andrew Kamensky (to be admitted *pro hac vice*)
Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Proposed Attorneys for Debtors*
*and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIT-BASED ASSET SERVICING AND SECURITIZATION LLC, et al., | Case No. 10-16040 (ALG) |
| Debtors.[1] | Joint Administration Requested |

### DECLARATION OF ANDREW RICKERT IN SUPPORT OF THE MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION CREDIT-BASED ASSET SERVICING AND SECURITIZATION LLC AND C-BASS INVESTMENT MANAGEMENT LLC FOR (I) ENTRY OF AN ORDER (A) APPROVING BIDDING AND AUCTION PROCEDURES FOR THE SALE OF THE COLLATERAL MANAGEMENT BUSINESS; AND (B) GRANTING RELATED RELIEF; AND (II) ENTRY OF AN ORDER (A) AUTHORIZING THE SALE OF THE COLLATERAL MANAGEMENT BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF COLLATERAL MANAGEMENT CONTRACTS; AND (C) GRANTING RELATED RELIEF

---

[1] The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment Management LLC, NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish Management Group LLC.

I, Andrew Rickert, hereby declare, pursuant to 28 U.S.C. §1746, as follows:

1. I am Executive Vice President and Treasurer of Credit-Based Asset Servicing and Securitization LLC ("C-BASS") and C-BASS Investment Management LLC ("CIM"; together with C-BASS, the "Seller"), two of the debtors and debtors-in-possession in the above-captioned chapter 11 cases.

2. Unless otherwise states, all facts set forth in this declaration (the "Declaration") are based upon: (a) my personal knowledge; (b) my experience as Executive Vice President and Treasurer of the Seller; (c) information provided to me by authorized representatives and professionals of the Debtors concerning the operation, structure, and financial affairs of the Debtors; and (d) information provided to me by employees working under my supervision. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Seller.

3. I make this Declaration in support of the *Motion of Debtors and Debtors-in-Possession Credit-Based Asset Servicing and Securitization LLC and C-BASS Investment Management LLC for (I) Entry of an Order (A) Approving Bidding and Auction Procedures for the Sale of the Collateral Management Business; and (B) Granting Related Relief; and (II) Entry of an Order (A) Authorizing the Sale of the Collateral Management Business Free and Clear of all Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Collateral Management Contracts Related Thereto; and (C) Granting Related Relief* (the "Motion")[2], filed contemporaneously herewith.

4. I support the Seller's request for the relief sought in the Motion for the following reasons: (a) the Assets related to the Seller's CM Business were fairly and thoroughly marketed,

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

including, but not limited to, the proposed Sale of the CM Business to FIG LLC, on behalf of itself or one or more of its managed affiliates (the "Proposed Purchaser"), pursuant to that that certain Asset Purchase Agreement, dated November 9, 2010 (as amended, the "Purchase Agreement"), which represents the highest and best offer for the CM Business, maximizes its value for the Seller's estates, and provides counterparties to executory contracts adequate assurance of future performance; (b) the Purchase Agreement was negotiated fairly and at arm's-length and entered into in good faith (and thus should be entitled to the protections afforded by Bankruptcy Code section 363(m)); and (c) the Sale represents an exercise of the Seller's sound business judgment. The bases for my opinion are set forth below.

**I.     Description of the Seller and the CM Business**

5.     CIM is registered with the Securities and Exchange Commission as an investment adviser under the Investment Advisers Act of 1940. C-BASS holds one hundred percent (100%) of the outstanding membership interests in CIM.

6.     Through the CM Business, the Seller provides collateral management services to 17 privately offered collateralized bond obligations (collectively, "CBOs"). The Seller's current management duties with respect to the CBOs consist of (a) monitoring collateral for the CBOs, (b) effectuating dispositions of defaulted CBO collateral as required by the CBO documentation, and (c) exercising certain rights on behalf of the CBOs. The Seller currently has no investment authority with respect to the CBOs, and since June 2007 has had no investment authority and has made no investment decisions with respect to all but one of the CBOs. The Seller has had no investment authority and has made no investment decisions with respect to the final CBO since December 2007.

7. The CM Business is comprised of (a) investment management or portfolio advisory contracts and collateral administration agreements associated with 17 CBOs, as listed on Schedules 2.1(i) and (ii) to the Purchase Agreement (collectively, the "Assigned Contracts"), (b) the Class E Securities resulting from the C-BASS CBO XIV and C-BASS CBO XVII transactions, as listed on Schedule 2.1(iii) to the Purchase Agreement (collectively, the "Class E Securities"); and (c) any other property in the Seller's possession relating to its management of its private collateralized bond obligations and its obligations under the Assigned Contracts and the CBO Constituent Documents (as defined in the Purchase Agreement), including, without limitation, all books, records, files, proprietary software, excel spreadsheets and proprietary modeling programs. The Class E Securities carry certain control rights which benefit the collateral manager under the Assigned Contracts, and are therefore being sold as part of the CM Business.

## II. The Sound Business Rationale for Selling the CM Business

8. As set forth in greater detail in the *Declaration of Andrew Rickert in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which is being filed contemporaneously herewith, the Debtors financed their prepetition activities with multiple repurchase agreements of mortgage loans and mortgage-backed securities (collectively, the "Repurchase Agreements"), and a variety of secured and unsecured debt. Substantially all of the Repurchase Agreements constituted repurchase agreements within the meaning of section 101(47) of the Bankruptcy Code and fell within the safe-harbor of section 559 of the Bankruptcy Code. The Debtors' principal secured debt consisted of a $1,855,000,000 senior secured credit facility (the "Senior Credit Facility") syndicated among a number of lenders (the "Senior Lenders") and secured by first liens on and security interests in substantially all of the Debtors'

assets (other than the assets covered by the Repurchase Agreements) and junior liens on and security interests in the Debtors' assets covered by the Repurchase Agreements (the "Senior Credit Facility Collateral").

9. As part of a large-scale forbearance and restructuring in the Summer and Fall of 2007, culminating in the execution of the Override Agreement (as defined in the First Day Declaration), the Debtors granted numerous subordinate liens and security interests, including without limitation subordinate liens and security interests on the Senior Credit Facility Collateral, as additional collateral security for the Repurchase Agreements. Under the Intercreditor Agreement (as defined in the First Day Declaration) executed simultaneously with the Override Agreement, however, the Senior Lenders have the exclusive and unilateral right to enforce their liens and security interests against, and otherwise consent to dispositions of, the Senior Credit Facility Collateral.

10. Over the course of the past 40 months, based on defaults under the Senior Credit Facility triggered by the mortgage crisis in the United States and pursuant to multiple forbearance and related agreements, the vast majority of the collateral for the Senior Credit Facility has been sold and the proceeds thereof applied to reduce the balance of the Senior Credit Facility to its current principal balance of approximately $170 million. The collateral remaining in the Debtors' possession and control as of the Petition Date (collectively, the "Remaining Collateral") consists principally of (i) various subordinated tranches of mortgage-backed securities, (ii) the CM Business, (iii) whole loans, (iv) REOs, (v) claims against third parties, (vi) deposits with surety bond purchasers, (vii) furniture, fixtures, equipment and various forms of intellectual property, (viii) receivables for the unused amount, if any, of professional retainers, and (ix) cash collateral on deposit in the Debtors' centralized cash operating account.

11. Similarly, based on defaults under the Repurchase Agreements triggered by the mortgage crisis in the United States, all of the Repurchase Agreements have been terminated by the respective counterparties, and substantially all of the assets subject to the Repurchase Agreements have been sold or retained by such counterparties.

12. Pursuant to the Restructuring Facilitation Agreement, dated as of September 20, 2010 (the "RFA"), by and among the Debtors, JPMorgan Chase Bank, N.A., as administrative agent under the Senior Credit Facility (the "Administrative Agent"), and certain lenders under the Senior Credit Facility that are signatories to the RFA (collectively, the "Participant Lenders"), the Administrative Agent and Participant Lenders have agreed *inter alia* to permit the Debtors to use up to $8.2 million of the cash proceeds of the Remaining Collateral in accordance with the terms and conditions of an adequate protection stipulation, interim approval of which the Debtors are seeking contemporaneously with other first-day motions. The RFA provides a timeline pursuant to which the Debtors are to use their respective best efforts to liquidate the Remaining Collateral. Specifically with respect to the CM Business, the Debtors are required to use their respective best efforts to obtain entry of an order authorizing the sale of the CM Business by December 31, 2010, and to obtain entry of an order approving Bidding Procedures in connection with the sale of the CM Business on or before November 22, 2010. Accordingly, the proposed sale of the CM Business, in accordance with the timeline provided by the RFA, is an exercise of the Seller's sound business judgment.

### III. Prepetition Marketing Efforts for the CM Business

13. The Seller engaged in extensive prepetition marketing efforts for the Sale of the CM Business. Ten (10) potential third-party bidders expressed interest in the CM Business, with nine (9) potential bidders (including the Proposed Purchaser) executing non-disclosure

agreements to conduct extensive pre-bid diligence. The Seller's criteria for a potential acquirer of the CM Business included that the prospective acquirer possess a demonstrated high level of knowledge and expertise with respect to the mortgage market and CBOs and, more importantly, embrace the best practices of the investment adviser/fiduciary elements of the collateral management business as practiced by the Seller. The ten potential third-party bidders who expressed interest in the CM Business (inclusive of the nine parties who executed non-disclosure agreements) represented a cross-section of investment advisers, several of which are currently managers of other collateralized bond obligations. Three (3) formal written bids were received (including from the Proposed Purchaser), with the Proposed Purchaser's bid being the highest and best offer. Continued arm's-length negotiations with the Proposed Purchaser after receipt of its offer resulted in the execution of the Purchase Agreement.

**IV.     Entry into the Purchase Agreement and Closing of the Sale is in the Sound Business Judgment of the Seller**

14.     The proposed Sale to the Proposed Purchaser represents an exercise of the Seller's sound business judgment because (a) the purchase price, and other terms of the Purchase Agreement, are fair and reasonable under the circumstances; (b) the parties proceeded with the utmost good faith in negotiating and entering into the Purchase Agreement; and (c) the Purchase Agreement is subject to Bidding Procedures designed to ensure that the highest or otherwise best offer has been or will be received.

15.     The Sale to the Proposed Purchaser represents adequate assurance of future performance to counterparties to the Assigned Contracts. The Proposed Purchaser has the ability, organizational capacity and financial wherewithal to perform all of the terms and conditions of all Assigned Contracts that are included in the Sale of the CM Business pursuant to the Purchase Agreement.

16. In sum, the proposed Sale is the only avenue by which the Seller can, with any degree of certainty, maximize and preserve the value of the CM Business. The proposed Sale and Purchase Agreement is the culmination of extensive, arm's-length, good faith, and hard-nosed negotiations, and should without reservation be approved in all respects, subject to the Bidding Procedures set forth in the Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: November 12, 2010

                                          *Andrew Rickert*
                                          Andrew Rickert

55436.000088 EMF_US 32801968v8