Peter S. Partee, Sr.
Jack A. Molenkamp
Andrew Kamensky (to be admitted *pro hac vice*)
Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Proposed Attorneys for Debtors*
 *and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIT-BASED ASSET SERVICING AND SECURITIZATION LLC, et al., | Case No. 10-16040 (ALG) |
| Debtors.[1] | Joint Administration Requested |

### *EX PARTE* MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION CREDIT-BASED ASSET SERVICING AND SECURITIZATION LLC AND C-BASS INVESTMENT MANAGEMENT LLC FOR ENTRY OF AN ORDER SHORTENING NOTICE PERIOD AND FIXING THE HEARING AND OBJECTION DEADLINE TO CONSIDER APPROVAL OF BIDDING PROCEDURES WITH RESPECT TO THE SALE OF THE COLLATERAL MANAGEMENT BUSINESS

Credit-Based Asset Servicing and Securitization LLC ("C-BASS") and C-BASS Investment Management LLC ("CIM" and together with C-BASS, the "Seller"), debtors and debtors-in-possession in the above-captioned cases, by and through its undersigned counsel, hereby submits this motion (the "Motion"), on an *ex parte* basis, for the entry of an order, the proposed form of which is annexed hereto as **Exhibit A** (the "Proposed Order"), pursuant to

---

[1] The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment Management LLC, NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish Management Group LLC.

Rules 2002(a)(2) and 9006(c)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9077-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), shortening the notice period with respect to the hearing (the "Bidding Procedures Hearing") on the portion of the Seller's motion [Docket No. 14] (the "Bidding Procedures and Sale Motion")[2] seeking approval of bidding and auction procedures, including a break-up fee (collectively, the "Bidding Procedures") in connection with the sale of the Seller's collateral management contracts and related assets comprising its collateral management business (collectively, the "CM Business"). In support of this Motion, the Seller relies on the Declaration of Peter S. Partee, Sr. (the "Partee Declaration"), a true and complete copy of which is annexed hereto as **Exhibit B**. In further support of this Motion, the Seller respectfully represents as follows:

### I. Background

#### A. The Chapter 11 Cases

1. On the date hereof (the "Petition Date"), each of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or an examiner has been made in these chapter 11 cases and no statutory committees have been appointed or designated.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Bidding Procedures and Sale Motion.

2. Concurrently with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of C-BASS. A description of the Debtors' businesses, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set forth in the *Declaration of Andrew Rickert in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which is being filed contemporaneously with this Motion.

### B. Description of the Seller and the CM Business

3. CIM is registered with the Securities and Exchange Commission (the "SEC") as an investment adviser under the Investment Advisers Act of 1940. C-BASS holds one hundred percent (100%) of the outstanding membership interests in CIM.

4. Through the CM Business, the Seller provides collateral management services to 17 privately offered collateralized bond obligations (collectively, "CBOs"). The Seller's current management duties with respect to the CBOs consist of (a) monitoring collateral for the CBOs, (b) effectuating dispositions of defaulted CBO collateral as required by the CBO documentation, and (c) exercising certain rights on behalf of the CBOs. The Seller currently has no investment authority with respect to the CBOs, and since June 2007 has had no investment authority and has made no investment decisions with respect to all but one of the CBOs. The Seller has had no investment authority and has made no investment decisions with respect to the final CBO since December 2007.

5. The CM Business is comprised of (a) investment management or portfolio advisory contracts and collateral administration agreements associated with 17 CBOs, as listed on Schedules 2.1(i) and (ii) to the Purchase Agreement (collectively, the "Assigned Contracts"); (b) the Class E Securities resulting from the C-BASS CBO XIV and C-BASS CBO XVII transactions, as listed on Schedule 2.1(iii) to the Purchase Agreement (collectively, the "Class E

3

Securities"); and (c) any other property in the Seller's possession relating to its management of its private collateralized bond obligations and its obligations under the Assigned Contracts and the CBO Constituent Documents (as defined in the Purchase Agreement), including, without limitation, all books, records, files, proprietary software, excel spreadsheets and proprietary modeling programs (collectively, the "Ancillary Assets," and together with the Assigned Contracts and the Class E Securities, the "Assets"). The Class E Securities carry certain control rights that benefit the collateral manager under the Assigned Contracts, and are therefore being sold as part of the CM Business.

  **C.  The Debtors' Capital Structure and the Restructuring Facilitation Agreement**

  6.  As set forth in greater detail in the First Day Declaration, the Debtors financed their prepetition activities with multiple repurchase agreements of mortgage loans and mortgage-backed securities (collectively, the "Repurchase Agreements"), and a variety of secured and unsecured debt. Substantially all of the Repurchase Agreements constituted repurchase agreements within the meaning of section 101(47) of the Bankruptcy Code and fell within the safe-harbor of section 559 of the Bankruptcy Code. The Debtors' principal secured debt consisted of a $1,855,000,000 senior secured credit facility (the "Senior Credit Facility") syndicated among a number of lenders (the "Senior Lenders") and secured by first liens on and security interests in substantially all of the Debtors' assets (other than the assets covered by the Repurchase Agreements) and junior liens on and security interests in the Debtors' assets covered by the Repurchase Agreements (the "Senior Credit Facility Collateral").

  7.  As part of a large-scale forbearance and restructuring in the Summer and Fall of 2007, culminating in the execution of the Override Agreement (as defined in the First Day Declaration), the Debtors granted numerous subordinate liens and security interests, including

without limitation subordinate liens and security interests on the Senior Credit Facility Collateral, as additional collateral security for the Repurchase Agreements. Under the Intercreditor Agreement (as defined in the First Day Declaration) executed simultaneously with the Override Agreement, however, the Senior Lenders have the exclusive and unilateral right to enforce their liens and security interests against, and otherwise consent to dispositions of, the Senior Credit Facility Collateral.

8. Over the course of the past 40 months, based on defaults under the Senior Credit Facility triggered by the mortgage crisis in the United States and pursuant to multiple forbearance and related agreements, the vast majority of the collateral for the Senior Credit Facility has been sold or foreclosed upon and the proceeds thereof applied to reduce the balance of the Senior Credit Facility to its current principal balance of approximately $170 million. The collateral remaining in the Debtors' possession and control as of the Petition Date (collectively, the "<u>Remaining Collateral</u>") consists principally of (i) various subordinated tranches of mortgage-backed securities, (ii) the CM Business, (iii) whole loans, (iv) REOs, (v) claims against third parties, (vi) deposits with surety bond purchasers, (vii) furniture, fixtures, equipment and various forms of intellectual property, (viii) receivables for the unused amount, if any, of professional retainers, and (ix) cash collateral on deposit in the Debtors' centralized cash operating account.

9. Similarly, based on defaults under the Repurchase Agreements triggered by the mortgage crisis in the United States, all of the Repurchase Agreements have been terminated by the respective counterparties, and substantially all of the assets subject to the Repurchase Agreements have been sold or retained by such counterparties.

10. Pursuant to the Restructuring Facilitation Agreement, dated as of September 20, 2010 (the "RFA"), by and among the Debtors, JPMorgan Chase Bank, N.A., as administrative agent under the Senior Credit Facility (the "Administrative Agent"), and certain lenders under the Senior Credit Facility that are signatories to the RFA (collectively, the "Participant Lenders"), the Administrative Agent and Participant Lenders have agreed *inter alia* to permit the Debtors to use up to $8.2 million of the cash proceeds of the Remaining Collateral in accordance with the terms and conditions of an adequate protection stipulation, interim approval of which the Debtors are seeking contemporaneously with other first-day motions. The RFA provides a timeline pursuant to which the Debtors are to use their respective best efforts to liquidate the Remaining Collateral. Specifically with respect to the CM Business, the Debtors are required to use their respective best efforts to obtain entry of an order authorizing the sale of the CM Business by December 31, 2010, and to obtain entry of an order approving Bidding Procedures in connection with the sale of the CM Business on or before November 22, 2010.

## II. Jurisdiction, Venue and Predicates for Relief Requested

11. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and the *Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York* dated July 10, 1984 (Ward, Acting C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The predicates for the relief requested herein are Bankruptcy Rules 2002(a)(2) and 9006(c)(1), and Local Rule 9077-1(b).

## III. Relief Requested

12. By this Motion, and based on the Partee Declaration, the Seller requests the entry of an order shortening the notice period for a hearing on approval of the Bidding Procedures so

that such hearing shall be held on November 19, 2010 at 10:00 a.m. (prevailing Eastern Time), but in no event later than November 22, 2010, and the deadline to file and serve objections to the relief requested in such hearing shall be November 18, 2010 at 4:00 p.m. (prevailing Eastern Time), or as soon after the entry of the Proposed Order as the Court may deem appropriate.

### IV. Basis for Requested Relief

13. Bankruptcy Rules 2002(a)(2) and 9006(c)(1) authorize the Court, for cause shown, to reduce the notice period for the Bidding Procedures Hearing. Local Bankruptcy Rule 9077-1(b) authorizes the Court to enter the Proposed Order upon an *ex parte* motion for cause shown.

14. As described in the Bidding Procedures and Sale Motion, the Seller has considered its options and fiduciary duties and, after arm's-length negotiations with FIG LLC, on behalf of itself or one or more of its managed affiliates (the "Proposed Purchaser"), on November 9, 2010, the Seller entered into the Purchase Agreement with the Proposed Purchaser. The Purchase Agreement contemplates the sale of the CM Business in accordance with the proposed Bidding Procedures, which are set forth in the Bidding Procedures and Sale Motion.

15. The Debtors are required pursuant to the RFA to use their best efforts to obtain entry of an order approving the Bidding Procedures for the sale of the CM Business on or before November 22, 2010. The expeditious sale of the CM Business, in accordance with the timeline set forth in the RFA, is critical to the Debtors' ability to continue operations and preserve the value of their assets for the benefit of the Debtors' constituents. The Senior Lenders have consented to the relief requested herein. Moreover, the Senior Lenders have consented to the sale of the CM Business subject to compliance with the RFA. Accordingly, the Seller submits

that sufficient cause exists to shorten the notice period with respect to the hearing on approval of the Bidding Procedures in accordance with the proposed schedule set forth above.

16. The Seller also seeks authority to limit notice of the Bidding Procedures Hearing to (a) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (b) counsel to the Administrative Agent; (c) counsel to the Proposed Purchaser; (d) the creditors holding the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, as identified on the Debtors' chapter 11 petitions[3]; (e) all parties who are known to possess or assert a secured claim against the CM Business or any other Lien related to the CM Business; (f) all parties to any agreements sought to be assumed and assigned pursuant to the Purchase Agreement; (g) all parties that have filed a notice of appearance or have requested service in these chapter 11 cases; and (h) counsel to Loreley Financing (Jersey) No. 22 Ltd. and Loreley Financing (Jersey) No. 28 Ltd., Stern & Kilcullen, LLC, 75 Livingston Avenue, Roseland, New Jersey 07068, Attention: Stephen M. Plotnick.

## V. Notice

17. Pursuant to Bankruptcy Rule 9006(c)(1), the Court may shorten time without notice. Nevertheless, notice of this Motion has been provided to (a) the U.S. Trustee; (b) counsel to the Committee, if one is appointed in the Debtors' chapter 11 cases; (c) the creditors holding the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, as identified on the Debtors' chapter 11 petitions; (d) counsel to the Proposed Purchaser; (e) any party who, in the past twelve (12) months, expressed to the Seller, in writing, an interest in acquiring the CM Business and who the Seller and its representatives reasonably and in good faith determine to potentially have the desire and financial wherewithal to effectuate the purchase; (f) counsel to the

---

[3] Notice of the Bidding Procedures Hearing will also be provided to the Official Committee of Unsecured Creditors (the "Committee") if one is appointed in these chapter 11 cases.

Administrative Agent; (g) all parties who are known to possess or assert a secured claim against the CM Business or any other Lien related to the CM Business; (h) the SEC; (i) the Internal Revenue Service; (j) all parties to any agreements sought to be assumed and assigned pursuant to the Purchase Agreement; (k) all parties that have filed a notice of appearance or have requested service in these chapter 11 cases; and (l) counsel to Loreley Financing (Jersey) No. 22 Ltd. and Loreley Financing (Jersey) No. 28 Ltd., Stern & Kilcullen, LLC, 75 Livingston Avenue, Roseland, New Jersey 07068, Attention: Stephen M. Plotnick.

### VI.  No Previous Request

18. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Seller respectfully requests (a) entry of an order, in substantially the form of the Proposed Order, granting the relief requested herein; and (b) such other and further relief in favor of the Seller as the Court may deem just and proper.

Dated: New York, New York
November 12, 2010

Respectfully submitted,

*/s/ Peter S. Partee, Sr.*
Peter S. Partee, Sr.
Jack A. Molenkamp
Andrew Kamensky (to be admitted *pro hac vice*)
Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Proposed Attorneys for Debtors
and Debtors-in-Possession*