UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIT-BASED ASSET SERVICING AND SECURITIZATION LLC, <u>et al.</u>, | Case No. 10-16040 (ALG) |
| Debtors.[1] | Jointly Administered |

ORDER (I) SCHEDULING AN AUCTION IN CONNECTION
WITH THE SALE OF THE COLLATERAL MANAGEMENT BUSINESS;
(II) APPROVING BIDDING PROCEDURES; (III) APPROVING BREAK-UP
FEE AND EXPENSE REIMBURSEMENT; (IV) SCHEDULING A SALE HEARING;
(V) ESTABLISHING OBJECTION DEADLINE; AND (VI) APPROVING SALE
<u>HEARING NOTICE AND NOTICE OF ASSUMPTION AND ASSIGNMENT</u>

Upon consideration of the motion (the "<u>Motion</u>")[2], dated as of November 12, 2010, of

Credit-Based Asset Servicing and Securitization LLC ("<u>C-BASS</u>") and C-BASS Investment

Management LLC ("<u>CIM</u>" and together with C-BASS, the "<u>Seller</u>"), debtors and debtors-in-

possession in the above-captioned cases, for entry of an order (this "<u>Order</u>"), pursuant to sections

105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended,

the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1, 6004-1, 6006-1 and 9014-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>"), granting the

following relief from this Court:

(a)     scheduling a hearing (the "<u>Sale Hearing</u>") to consider approval of the
        proposed sale (the "<u>Sale</u>") by the Seller of certain of the Seller's assets,
        which comprise the Seller's CM Business, free and clear of all claims (as
        defined in section 101(5) of the Bankruptcy Code) and any other interests,

---

[1]     The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment
        Management LLC, NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish
        Management Group LLC.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such term in the
        Motion.

liens, mortgages, pledges, security interests, rights of first refusal, obligations and encumbrances of any kind whatsoever (collectively, the "<u>Liens</u>") (with such Liens attaching to the proceeds with the same validity and priority), to (i) FIG LLC, on behalf of itself or one or more of its managed affiliates (the "<u>Proposed Purchaser</u>") under that certain Purchase Agreement (as amended, the "<u>Purchase Agreement</u>"), between the Seller and Proposed Purchaser, dated as of November 9, 2010, attached to the Motion as <u>Exhibit C</u>, or (ii) another Successful Bidder (as defined below);

(b)     approving the bidding and auction procedures (the "<u>Bidding Procedures</u>"), as set forth herein;

(c)     approving the break up fee (the "<u>Break-Up Fee</u>") and expense reimbursement ("<u>Expense Reimbursement</u>"), in accordance with the Purchase Agreement;

(d)     scheduling an auction ("<u>Auction</u>") to the extent the Seller receives additional higher or better offers for the CM Business;

(e)     establishing an objection deadline in connection with the Sale; and

(f)     approving the form of, and notice procedures relating to, the (i) Sale Hearing Notice (as defined below), and (ii) Notice of Assumption and Assignment (as defined below);

and upon consideration of the Rickert Declaration in support of the Motion and the Court having held a hearing on December 6, 2010 (the "<u>Hearing</u>") on the Motion and having considered the arguments of counsel made, and the evidence submitted, proffered or adduced at the Hearing; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>"), (ii) counsel to JPMorgan Bank, N.A., as administrative agent under the Debtors' Senior Credit Facility (the "<u>Administrative Agent</u>"), (iii) counsel to the Proposed Purchaser, (iv) the creditors holding the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, as identified on the Debtors' chapter 11 petitions, and counsel to the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), (v) all parties who are known to possess or assert a secured claim against the CM Business or any other Lien related to the CM Business, (vi) all parties that have filed a

notice of appearance or have requested service in these chapter 11 cases, (vii) all parties to any agreements sought to be assumed and assigned pursuant to the Purchase Agreement, and (viii) counsel to Loreley Financing (Jersey) No. 22 Ltd. and Loreley Financing (Jersey) No. 28 Ltd., Stern & Kilcullen, LLC, 75 Livingston Avenue, Roseland, New Jersey 07068, Attention: Stephen M. Plotnick; and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and their creditors, and all parties in interest; and that the legal and factual bases set forth in the Motion and the Rickert Declaration and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.     The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York* dated July 10, 1984 (Ward, Acting C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     Good and sufficient notice of the Motion has been given under the circumstances, and no further or other notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons.

C.     The Seller's notice of auction and sale (the "Sale Hearing Notice"), annexed hereto as Schedule 1, is appropriate and reasonably calculated to provide interested parties with

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Any and all findings of fact shall constitute findings of fact even is stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if stated as findings of fact.

timely and proper notice of the Auction and Sale and related deadlines, and no other or further notice is required.

D.     The Seller's notice of the assumption and assignment of the Assigned Contracts (the "Notice of Assumption and Assignment"), annexed hereto as Schedule 2, is appropriate and reasonably calculated to provide interested parties with timely and proper notice of the assumption and assignment of the Assigned Contracts and related deadlines and cure amounts, and no other or further notice is required.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is **GRANTED**.

2.     The Bidding Procedures, as set forth below, are approved and shall apply with respect to the proposed sale of the CM Business (provided the Seller may modify, amend and waive, as applicable, the Bidding Procedures after consultation with the Committee and the Administrative Agent, and subject to Court order):

(a)     **Assets to Be Sold**: The assets to be sold shall consist of the Assigned Contracts (as defined in the Purchase Agreement), the Class E Securities (as defined in the Purchase Agreement), and the Ancillary Assets (as defined in the Purchase Agreement) that comprise the CM Business.

(b)     **Confidentiality Agreements**: Upon execution of a confidentiality agreement, in form and substance satisfactory to the Seller, counsel to the Committee and the Administrative Agent, any party that wishes to conduct due diligence in respect of the CM Business may be granted access to all material information that has been or will be provided to Proposed Purchaser and other bidders; *provided, however,* that prior to receipt by a party of any information from the Seller (including, but not limited to, the Purchase Agreement and its schedules and exhibits, business and financial information and access to representatives of the Seller), each such party will be required to deliver evidence reasonably satisfactory to the Seller, counsel to the Committee and the Administrative Agent, establishing such party's financial capability to timely consummate a purchase of the CM Business.

The Administrative Agent and counsel to the Committee shall be granted access to any such information provided to any bidders.

(c)     **Bid Deadline**: Any person or entity interested in participating in the Auction must submit a Qualifying Bid (as defined below) on or before December 31, 2010 at noon (prevailing Eastern Time) (the "<u>Bid Deadline</u>") in writing, to (i) counsel to the Debtors, Hunton & Williams LLP, 200 Park Avenue, 53rd Floor, New York, New York, 10166-0136, Attention: Peter S. Partee, Sr. and Scott H. Bernstein; (ii) C-BASS Investment Management LLC, 335 Madison Avenue, 19th Floor, New York, New York 10017, Attention: General Counsel; and (iii) counsel to the Administrative Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attention: Damian S. Schaible; and (iv) counsel to the Committee, Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022, Attention: Mark T. Power and Jeffrey Zawadzki.

(d)     **Qualifying Bids**: To participate in the bidding process and be deemed a "<u>Qualifying Bidder</u>," each potential bidder (other than the Proposed Purchaser) must submit a "<u>Qualifying Bid</u>" by the Bid Deadline. The Purchase Agreement is deemed a Qualifying Bid and Proposed Purchaser is deemed a Qualifying Bidder. Otherwise, to constitute a Qualifying Bid, a bid must:

    i.     be in writing and state that such bidder is prepared to enter into a legally binding asset purchase agreement or similar agreement for the acquisition of the CM Business on terms and conditions no less favorable to the Seller than the terms and conditions contained in the Purchase Agreement, and with a purchase price of no less than the Proposed Purchaser's purchase price plus $275,000;

    ii.     provide details of any assumptions about the transaction that are key to the purchase price;

    iii.     include a mark-up of the Purchase Agreement (a "<u>Modified Purchase Agreement</u>") reflecting the variations from the Purchase Agreement, and a clean and executed Modified Purchase Agreement;

    iv.     otherwise include terms and conditions substantially the same in all respects to the Purchase Agreement (including with respect to the representations and warranties);

    v.     provide that such bidder's offer is irrevocable until the closing of the purchase of the CM Business if such bidder is the Successful Bidder or the Back-Up Bidder (each as defined below);

    vi.     state such bidder is financially capable of consummating the transactions contemplated by the Modified Purchase Agreement, and that there are no financing or due diligence contingencies for the bidder to consummate the Modified Purchase Agreement;

    vii.     state such bidder is a registered investment adviser with the Securities and Exchange Commission (the "<u>SEC</u>");

viii.    provide that such bidder will close on the sale of the CM Business within the same time period provided for in the Purchase Agreement;

ix.    include such financial and other information that will allow the Seller to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement and evaluate bidder's demonstration of its experience as a fiduciary in the investment management business;

x.    include a statement that there are no conditions precedent to the bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals will have been obtained prior to the bid. The bidder's bid and Modified Purchase Agreement should also highlight any governmental or third-party consents needed to consummate the acquisition of the CM Business to the extent they are not already contemplated in the Purchase Agreement;

xi.    not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

xii.    fully disclose the identity of each entity that will be bidding for the CM Business or otherwise participating in connection with such bid, and the complete terms of any such participation;

xiii.    include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Purchase Agreement;

xiv.    include the names and contact information of members of the bidder who will be available to answer questions regarding the offer;

xv.    include the names of external advisors including financial, legal, and accounting firms, as well as industry consultants or other resources;

xvi.    include any other information or factors that may be relevant to the Seller and its advisors in consideration of the bid; and

xvii.    include a cash deposit by wire transfer equal to One Hundred Thousand Dollars $100,000 (the "<u>Good Faith Deposit</u>").

The Seller shall make a determination, subject to Court order, regarding whether a bid is a Qualifying Bid, after consultation with counsel to the Committee and the Administrative Agent, and shall notify bidders whether their bids have been determined to be Qualifying Bids by no later than one hour before the start of the Auction (as defined below);

(e)    **<u>No Qualifying Bids</u>**:  If no timely, conforming Qualifying Bids, other than the Purchase Agreement, are submitted by the Bid Deadline, the Seller shall not hold

an Auction (as defined below) and, instead, shall request at the Sale Hearing that the Court approve the Purchase Agreement with the Proposed Purchaser.

(f) **Right to Disseminate Information Relating to Bid**. At any time, whether before or after the Auction, the Seller may share or not share any bid for the CM Business with the other bidders.

(g) **Auction**: In the event the Seller timely receives one or more Qualifying Bids other than the Purchase Agreement, the Seller shall conduct the Auction with respect to the CM Business. The Auction will be held at the offices of Hunton & Williams LLP, 200 Park Avenue, 53rd Floor, New York, New York, 10166-0136, on or before January 10, 2011 at 10:00 a.m. (prevailing Eastern Time), or such other location as designated by the Debtors in a notice to all Qualifying Bidders. The Auction shall be governed by the following procedures (which may be amended, modified and waived, as applicable, by the Seller at any time after consultation with counsel to the Committee and the Administrative Agent, subject to further order of the Court):

   i.     The Proposed Purchaser and the Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

   ii.    Only representatives of the Seller, the Proposed Purchaser, Qualifying Bidders, counsel and other advisors selected by the Committee, the Administrative Agent and representatives from the Office of the U.S. Trustee shall be entitled to be present at the Auction;

   iii.   Only the Proposed Purchaser and Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

   iv.    A subsequent bid by the Proposed Purchaser will not be deemed to waive its right to the Break-Up Fee or Expense Reimbursement;

   v.     Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

   vi.    Bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction and such Bid shall be announced prior to the start of the Auction (the "Initial Highest Bid");

   vii.   Qualifying Bidders may submit subsequent bids to the Initial Highest Bid and all such subsequent bids must be stated in an amount exceeding each prior bid by USD $100,000 in purchase price consideration;

   viii.  The Seller may determine the order in which Qualifying Bidders shall bid at the Auction;

ix.     All Qualifying Bidders and the Proposed Purchaser shall be able to submit additional bids and make additional modifications to the Purchase Agreement or Modified Purchase Agreement, as applicable, at the Auction as determined by the Seller at any time after consultation with counsel to the Committee and the Administrative Agent;

x.      The Auction may include individual negotiations with the Qualifying Bidders and the Proposed Purchaser and/or open bidding in the presence of all other Qualifying Bidders and the Proposed Purchaser;

xi.     The Seller may determine after consulting with counsel to the Committee and the Administrative Agent, which portions of the Auction shall be transcribed on the record and which shall not be transcribed;

xii.    The Seller may, and after consulting with counsel to the Committee and the Administrative Agent, discuss any Qualifying Bid with other Qualifying Bidders individually or together in any other group or groups of Qualifying Bidders, as determined by the Seller;

xiii.   The Auction shall continue until there is only one offer that the Seller determines, after consultation with counsel to the Committee and the Administrative Agent, and subject to Court approval, with respect to the CM Business, is the highest and/or best offer from among the Qualifying Bidders submitted at the Auction (the "Successful Bid"). In making this decision, the Seller may consider any factors it deems relevant, including, without limitation, the amount of the purchase price, the form of consideration being offered, the expense to the Seller of any obligation to pay the Break-Up Fee and Expense Reimbursement, the likelihood of the Qualifying Bidder's ability to close a transaction and the timing thereof, the number, type, and nature of any changes to the Purchase Agreement requested by each Qualifying Bidder, any contingencies relating to a Qualifying Bidder's offer, and the net benefit to the Seller's estate. The Proposed Purchaser or Qualifying Bidder submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of a purchaser, as set forth in the applicable Purchase Agreement or Modified Purchase Agreement; and

xiv.    Within three (3) days after conclusion of the Auction, but prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made and make and pay for all necessary filings with all applicable governmental or other authorities. Bids made after the close of the Auction shall not be considered by the Seller.

(h)   **Back-Up Bidder and Return of Good Faith Deposits**:

    i.    If an Auction is conducted, the Qualifying Bidder with the next highest or otherwise best Qualifying Bid, as determined by the Seller in the exercise of its business judgment at the Auction and in consultation with the Committee and the Administrative Agent, shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until 24 hours after the closing of the sale transaction with the Successful Bidder. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Seller will be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Court.

    ii.    Except as otherwise provided herein, Good Faith Deposits shall be returned to each bidder not selected by the Seller as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) Business Day following the conclusion of the Auction. The Good Faith Deposit of the Back-Up Bidder shall be held by the Seller until one (1) Business Day after the closing of the Sale transaction with the Successful Bidder for the CM Business.

3.    The Break-Up Fee and Expense Reimbursement are approved. The Seller is hereby authorized and directed to pay the Break-Up Fee and Expense Reimbursement in the event all or substantially all of the CM Business is sold to another bidder and the Purchase Agreement is terminated as a result of entry of an Order approving an alternative transaction. Upon closing of the alternative transaction, the Break-Up Fee and Expense Reimbursement shall be paid in cash directly to the Proposed Purchaser from the proceeds of the alternative transaction as an administrative expense claim in the Seller's chapter 11 case pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

4.    The form and manner of providing the Sale Hearing Notice is hereby approved. Service of the Sale Hearing Notice, as set forth below, constitutes good and sufficient notice of the Auction and Sale Hearing.

5.     The Court shall hold the Sale Hearing on January 12, 2011 at 11:00 a.m. (prevailing Eastern Time) at which time the Court will consider approval of the Sale of the CM Business, including the Seller's assumption and assignment of the Assigned Contracts to Proposed Purchaser or the Successful Bidder.

6.     Any objection (an "Objection") to the Sale of the CM Business, the assumption and assignment of any Assigned Contracts, or the Cure Amounts shall (a) be in writing; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, on or before 4:00 p.m. (prevailing Eastern Time) on January 5, 2011 or on such later date and time as the Debtor may agree; and (d) be served with a copy on (i) counsel for the Debtors, Hunton & Williams LLP, Attention: Peter S. Partee, Sr. and Scott H. Bernstein, 200 Park Avenue, 53rd Floor, New York, New York, 10166-0136; (ii) counsel for the Proposed Purchaser, SNR Denton U.S. LLP, Attention: Louis Curcio and A. James Cotins, Two World Financial Center, New York, New York 10281; (iii) the U.S. Trustee, Office of the United States Trustee for the Southern District of New York, Attention: Susan Golden, 33 Whitehall Street, 21st Floor, New York, New York 10004; (iv) counsel to the Administrative Agent, Davis Polk & Wardwell LLP, Attention: Damian S. Schaible, 450 Lexington Avenue, New York, New York 10017; and (v) counsel to the Committee, Hahn & Hessen LLP, Attention: Mark T. Power and Jeffrey Zawadzki, 488 Madison Avenue, New York, New York 10022.  Each Objection must state with specificity the factual and legal bases of such Objection.  All Objections to the Sale of the CM Business, the assumption and assignment of any Assigned Contracts, or the Cure Amounts, including without limitation any objection on the

ground that any necessary consents for the Sale of the CM Business have not been obtained, are expressly preserved for the Sale Hearing and shall not be prejudiced by entry of this Order.

7.     The notices described in the subparagraphs below (collectively, the "<u>Notices</u>") shall be sufficient and no further notice shall be required if given as follows:

(a)     The Seller shall serve, within 3 business days after entry of the Bidding Procedures Order (the "<u>Mailing Deadline</u>"), by overnight courier, electronic mail, or same-day messenger delivery, copies of the Sale Hearing Notice upon: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Proposed Purchaser; (iv) any party who, in the past 12 (twelve) months, expressed to the Seller an interest in acquiring the CM Business, and who the Seller and its representatives reasonably and in good faith determine potentially have the desire and financial wherewithal to effectuate the Sale; (v) counsel to the Administrative Agent; (vi) all parties who are known to possess or assert a secured claim against the CM Business or any other Lien related to the CM Business; (vii) the SEC; (viii) the Internal Revenue Service; (ix) all parties to any agreements sought to be assumed and assigned pursuant to the Purchase Agreement; (x) all parties that have filed a notice of appearance or have requested service in these chapter 11 cases; and (xi) counsel to Loreley Financing (Jersey) No. 22 Ltd. and Loreley Financing (Jersey) No. 28 Ltd., Stern & Kilcullen, LLC, 75 Livingston Avenue, Roseland, New Jersey 07068, Attention: Stephen M. Plotnick.

(b)     On or before the Mailing Deadline, the Seller (or its agent) shall serve, by overnight courier, electronic mail, or same-day messenger delivery, the Notice of Assumption and Assignment, substantially in the form attached hereto as <u>Schedule 2</u>, upon all known nondebtor parties to the Assigned Contracts. The Notice of Assumption and Assignment shall set forth (i) the intent of the Seller to assume the Assigned Contracts and assign them to Proposed Purchaser (or to any Successful Bidder), and (ii) applicable Cure Amounts, if any. The Notice of Assumption and Assignment shall identify the Assigned Contracts and the Cure Amounts that the Seller believes must be paid to cure all defaults under the Assigned Contracts. If no amount is listed on the Notice of Assumption and Assignment, the Seller believes that there is no Cure Amount due.

8.     Any objections to (a) the assumption and assignment of an Assigned Contract, or (b) the amount asserted as the Cure Amount (each, an "<u>Assumption and/or Cure Objection</u>") must be in writing and set forth with specificity the nature of the objection and the cure amount

that the objecting party believes should be paid in connection with the assumption of the Assigned Contract (the "Claimed Cure Amount").

9.      If an Objection challenges a Cure Amount, the Objection must set forth the Claimed Cure Amount with appropriate documentation in support thereof.  Upon receipt of an Objection to a Cure Amount, the Seller may, after consultation with counsel to the Committee and the Administrative Agent, hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the applicable Debtor and the objecting party.  So long as the Seller holds the Claimed Cure Amount in reserve and otherwise satisfies the requirements for assumption under section 365 of the Bankruptcy Code, the Seller may, without further delay, assume and assign the Assigned Contract that is the subject of an Objection relating to that Assigned Contract's Cure Amount.

10.      If no Objection to the Cure Amount or the proposed assumption and assignment of an Assigned Contract is timely filed and served, the Seller may assume and assign the Assigned Contract to Proposed Purchaser or the Successful Bidder and the Cure Amount set forth in the Notice of Assumption and Assignment shall be binding upon the respective nondebtor party to the Assigned Contract for all purposes in the Seller's chapter 11 case and otherwise. The respective nondebtor party shall be forever barred from objecting to the assumption and assignment of the relevant Assigned Contract and the Cure Amount, including, without limitation, the right to assert any condition to assignment and/or additional cure or other amount with respect to their respective Assigned Contracts.

11.      Failure of any objecting person or entity to timely file its Objection shall be an absolute bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion or the Seller's assumption and assignment of any of the Assigned Contracts (including the Proposed

Purchaser becoming collateral manager under the Assigned Contracts), or the consummation and performance of the Sale (including the transfer free and clear of all Liens).

12. The Court shall retain exclusive jurisdiction over any matter or dispute arising from or relating to the implementation of this Bidding Procedures Order. The Seller is hereby authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements of this Bidding Procedures Order.

13. Notwithstanding any other provision contained herein, the Seller, after consultation with the Committee and the Administrative Agent, may adjourn or cancel the Auction or Sale at any time as an exercise of its sound business judgment.

14. Notwithstanding any potential applicability of Bankruptcy Rules 6004(h) and 6006(d) or other Rule, this Bidding Procedures Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable upon signature hereof.

Dated:   December 8, 2010
         New York, New York

                            */s/ Allan L. Gropper*
                            THE HONORABLE ALLAN L. GROPPER
                            UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1

**(Proposed Form of Sale Hearing Notice)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CREDIT-BASED ASSET SERVICING | ) | Case No. 10-16040 (ALG) |
| AND SECURITIZATION LLC, et al., | ) | |
| | ) | Jointly Administered |
| Debtors.[1] | ) | |
| | ) | |

## NOTICE OF AUCTION AND SALE HEARING FOR SALE
## OF COLLATERAL MANAGEMENT BUSINESS ASSETS

**PLEASE TAKE NOTICE THAT:**

      1.      On November 12, 2010, Credit-Based Asset Servicing and Securitization LLC and C-BASS Investment Management LLC (collectively, the "Seller"), debtors and debtors-in-possession in the above-captioned cases, filed a motion (the "Motion")[2] pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1, 6006-1 and 9014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), seeking approval of, among other things, (a) the establishment of bidding procedures (the "Bidding Procedures"), (b) the scheduling of an auction (the "Auction"), as necessary, and (c) the scheduling of a sale hearing (the "Sale Hearing") in connection with the proposed sale (the "Sale") by the Seller, of the Seller's CM Business (as defined below). On December 6, 2010, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures and the Sale Hearing schedule.

      2.      The Seller and FIG LLC, on behalf of itself or one or more of its managed affiliates (the "Proposed Purchaser") have entered into a Purchase Agreement, dated as of November 9, 2010 (as amended, the "Purchase Agreement"), regarding the Sale of certain of the Seller's assets which comprise the Seller's CM Business, pursuant to which the Seller has agreed to sell the CM Business to Proposed Purchaser, subject to higher and better offers.

      3.      Pursuant to the Bidding Procedures Order, if the Seller receives any higher or better bids for the CM Business, the Auction for the CM Business shall take place on January 10, 2011 at 10:00 a.m. (prevailing Eastern Time), at the offices of Hunton & Williams LLP, 200 Park Avenue, 53rd Floor, New York, New York, 10166-0136. Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than December 31, 2010

---

[1]      The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment Management LLC, NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish Management Group LLC.

[2]      Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Motion.

at noon (prevailing Eastern Time) (the "<u>Bid Deadline</u>") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the CM Business must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.      The Bidding Procedures Order provides that a Sale Hearing will be held on January 12, 2011, at 11:00 a.m. (prevailing Eastern Time) before the Honorable Allan L. Gropper, United States Bankruptcy Judge, in Room 617 of the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.

5.      At the Sale Hearing, the Seller shall request the Court to enter an order, among other things, authorizing the Sale of the CM Business to the Proposed Purchaser pursuant to the Purchase Agreement, or authorizing the Sale of the CM Business to the Successful Bidder (as defined in the Bidding Procedures Order) at the Auction, free and clear of Liens (as defined in the Motion) and any successor liability claims.

6.      At the Sale Hearing, the Court may enter such orders as it deems appropriate under the applicable law and as required by the circumstances and equities of these chapter 11 cases. Any objection (an "<u>Objection</u>") to the Sale of the CM Business pursuant to the terms of the Purchase Agreement shall be in writing, shall conform to Bankruptcy Rules and the Local Rules, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Seller's estates or properties, the basis for the Objection and the specific grounds therefor, and shall be served upon (a) counsel for the Debtors, Hunton & Williams LLP, Attention: Peter S. Partee, Sr. and Scott H. Bernstein, 200 Park Avenue, 53rd Floor, New York, New York, 10166-0136; (b) counsel for Proposed Purchaser, SNR Denton U.S. LLP, Attention: Louis Curcio and A. James Cotins, Two World Financial Center, New York, New York 10281; (c) the Office of the United States Trustee for the Southern District of New York, Attention: Susan Golden, 33 Whitehall Street, 21st Floor, New York, New York 10004; (d) counsel to JPMorgan Chase Bank, N.A.., as Administrative Agent under the Senior Credit Facility, Davis Polk & Wardwell LLP, Attention: Damian S. Schaible, 450 Lexington Avenue, New York, New York 10017; and (e) counsel to the Committee, Hahn & Hessen LLP, Attention: Mark T. Power and Jeffrey Zawadzki, 488 Madison Avenue, New York, New York 10022, so as to be actually received no later than January 5, 2011 at 4:00 p.m. (prevailing Eastern Time).

7.      A copy of the Purchase Agreement is attached as <u>Exhibit C</u> to the Motion.  A copy of the Purchase Agreement may be requested by contacting Peter S. Partee, Sr. and Scott H. Bernstein, 200 Park Avenue, 53rd Floor, New York, New York, 10166-0136, Telephone: (212) 309-1000.


Dated:   December __, 2010
           New York, New York

                              _____
                              Peter S. Partee, Sr.
                              Jack A. Molenkamp
                              Andrew Kamensky (admitted *pro hac vice*)

Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Proposed Attorneys for Debtors*
*and Debtors-in-Possession*

# SCHEDULE 2

**(Proposed Form of Notice of Assumption and Assignment)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                        )
In re:                                  )    Chapter 11
                                        )
CREDIT-BASED ASSET SERVICING            )    Case No. 10-16040 (ALG)
AND SECURITIZATION LLC, et al.,         )
                                        )    Jointly Administered
                    Debtors.[1]         )
                                        )
_____ )

### NOTICE OF INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS IN CONNECTION WITH THE PROPOSED SALE OF THE COLLATERAL MANAGEMENT BUSINESS ASSETS AND THE FIXING OF CURE AMOUNTS AND PROCEDURES ASSOCIATED THEREWITH

**PLEASE TAKE NOTICE THAT:**

1.      On December 6, 2010, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order (the "Bidding Procedures Order"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1, 6006-1 and 9014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") in the above-captioned chapter 11 cases of Credit-Based Asset Servicing and Securitization LLC ("C-BASS") and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession (together with C-BASS, the "Debtors"), approving, among other things, this notice, the scheduling of the Sale Hearing, and the procedures for the fixing of cure amounts (the "Cure Amounts") related to the assumption and assignment of certain executory contracts, unexpired leases, and other agreements (the "Assigned Contracts") with respect to each counterparty listed on Exhibit A attached hereto, in connection with the sale of assets which comprise the Seller's (as defined below) collateral management business (the "CM Business").   C-BASS and C-BASS Investment Management LLC (collectively, the "Seller") will assume the Assigned Contracts and assign them to FIG LLC, on behalf of itself or one or more of its managed affiliates (the "Proposed Purchaser"), pursuant to the terms of that certain Purchase Agreement, dated as of November 9, 2010 (as amended, the "Purchase Agreement")[2], between the Seller and the Proposed Purchaser, or to another Successful Bidder (as defined in the Bidding Procedures Order) at an Auction (as defined in the Bidding Procedures Order) for the sale of the CM Business.

---

[1]     The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment Management LLC, NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish Management Group LLC.

[2]     Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.

2.     The Seller believes any and all defaults (other than the filing of these chapter 11 cases) under the Assigned Contracts can be cured by the payment of the Cure Amounts listed on <u>Exhibit A</u>.

3.     Any objections to (a) the assumption and assignment of an Assigned Contract (including the Proposed Purchaser becoming collateral manager under each Assigned Contract), or (b) the amount asserted as the Cure Amount (each, an "<u>Assumption and/or Cure Objection</u>") must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of the Assigned Contracts (the "<u>Claimed Cure Amount</u>").

4.     To be considered a timely Assumption and/or Cure Objection, the Assumption and/or Cure Objection must be filed with the Court and served upon (a) counsel for the Debtors, Hunton & Williams LLP, 200 Park Avenue, 53rd Floor, New York, New York, 10166-0136, Attention: Peter S. Partee, Sr. and Scott H. Bernstein; (b) counsel for Proposed Purchaser, SNR Denton U.S. LLP, Attention: Louis Curcio and A. James Cotins, Two World Financial Center, New York, New York 10281; (c) the Office of the United States Trustee for the Southern District of New York, Attention: Susan Golden, 33 Whitehall Street, 21st Floor, New York, New York 10004; (d) counsel to JPMorgan Chase Bank, N.A., as Administrative Agent under the Senior Credit Facility, Davis Polk & Wardwell LLP, Attention: Damian S. Schaible, 450 Lexington Avenue, New York, New York 10017; and (e) counsel to the Committee, Hahn & Hessen LLP, Attention: Mark T. Power and Jeffrey Zawadzki, 488 Madison Avenue, New York, New York 10022, so as to be actually received no later than January 5, 2011 at 4:00 p.m. (prevailing Eastern Time).

5.     If an Assumption and/or Cure Objection is timely filed, a hearing with respect to that objection shall be held before the Honorable Allan L. Gropper, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "<u>Sale Hearing</u>").

6.     Unless the Assumption and/or Cure Objection is timely filed and served, the assumption and assignment of the applicable Assigned Contract will proceed without further notice at the Sale Hearing to approve the sale of the CM Business.

7.     Parties that fail to file and serve timely Assumption and/or Cure Objections shall be deemed to have waived and released any and all rights to assert Cure Amounts different from those listed on <u>Exhibit A</u> and, subject to payment of the cure amount(s) listed on <u>Exhibit A</u> with respect to their Assigned Contract(s), shall be forever barred and estopped from asserting or claiming against the pertinent Debtor, the Proposed Purchaser, or any assignee of any Assigned Contract that any additional amounts are due or defaults exist, or prohibitions or conditions to assignment exist or must be satisfied, under such Assigned Contract.

8.     If no Cure Amounts are due under the Assigned Contract, and the nondebtor party to the Assigned Contract does not otherwise object to the Seller's assumption and assignment of the Assigned Contract, no further action need be taken on the part of that nondebtor party.

9. Assumption and/or Cure Objections that object solely to the Cure Amount may not prevent or delay the Seller's assumption and assignment of any Assigned Contracts. If a party objects solely to a Cure Amount, the Seller may, in its sole discretion, hold the Claimed Cure Amount in reserve pending further order of the Court or mutual agreement of the parties. So long as the Seller holds the Claimed Cure Amount in reserve, and there are no other unresolved objections to assumption and assignment, the Seller can, without further delay, assume and assign the Assigned Contract that is the subject of the objection. Under such circumstances, the objecting party's recourse is limited to the funds held in reserve.

10. The Seller's decision to assume and assign to the Proposed Purchaser (or the Successful Bidder) the Assigned Contracts is subject to Court approval and the closing of the Purchase Agreement (the "Closing"). Accordingly, absent such Closing, any of the Assigned Contracts shall not be deemed assumed nor assigned, and shall in all respects be subject to further administration under the Bankruptcy Code. The inclusion of any document on the list of Assigned Contracts shall not constitute or be deemed to be a determination or admission by any Debtor or the Proposed Purchaser (or the Successful Bidder) that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated:  December __, 2010
        New York, New York

_____

Peter S. Partee, Sr.
Jack A. Molenkamp
Andrew Kamensky (admitted *pro hac vice*)
Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Proposed Attorneys for Debtors
and Debtors-in-Possession*