Peter S. Partee, Sr.
Jack A. Molenkamp
Andrew Kamensky (admitted *pro hac vice*)
Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Proposed Attorneys for Debtors
and Debtors-in-Possession*

Hearing Date and Time: December 23, 2010 at 9:30 a.m.
Objection Deadline: December 21, 2010 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CREDIT-BASED ASSET SERVICING AND SECURITIZATION LLC, et al., | Case No. 10-16040 (ALG) |
| Debtors.[1] | (Jointly Administered) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER
AUTHORIZING AND APPROVING THE SALE OR, IN THE
ALTERNATIVE, THE ABANDONMENT OF THE EQUITY INVESTMENTS**

TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

  The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby move the Court (the "Motion") for the entry of an order, the proposed form of which is annexed hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105, 363 and 554(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6007-1 of the Local Rules for the Bankruptcy Court of the Southern District of New York (the "Local Rules"), (i) authorizing

---

[1] The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment Management LLC, NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish Management Group LLC.

and approving the sale of the Equity Investments (defined below) to the buyer or buyers (the "Purchasers") offering the highest and best bid for such items free and clear of all claims (as defined in section 101(5) of the Bankruptcy Code) and any other interests, liens, mortgages, pledges, security interests, rights of first refusal, obligations and encumbrances of any kind whatsoever (collectively, the "Liens") or (ii), in the alternative, authorizing the Debtors to abandon the Equity Investments for which they cannot consummate a sale by December 31, 2010 to the applicable Trustees (defined below). In support of this Motion, the Debtors respectfully represent as follows:

### I. Jurisdiction, Venue and Predicates for Relief Requested

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the *Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York*, dated July 14, 1984 (Ward, Acting C.J.). Venue of these chapter 11 cases and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

2. The predicates for the relief requested herein are sections 105, 363 and 554(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and Local Rule 6007-1.

### II. Background

**A. The Chapter 11 Cases**

3. On November 12, 2010 (the "Petition Date"), each of the Debtors filed a *Voluntary Petition* for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court"). By an order [Docket No. 28] entered on November 16, 2010, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 1, 2010, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors (the "Creditors Committee"). No trustee or examiner has been appointed or designated in these chapter 11 cases.

5. A description of the Debtors' businesses and the reasons for filing these chapter 11 cases are set forth in the *Declaration of Andrew Rickert in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 3].

B. **The Debtors' Capital Structure**

6. As set forth in greater detail in the First Day Declaration, the Debtors financed their prepetition activities with multiple repurchase agreements of mortgage loans and mortgage-backed securities (collectively, the "Repurchase Agreements"), and a variety of secured and unsecured debt. Substantially all of the Repurchase Agreements constituted repurchase agreements within the meaning of section 101(47) of the Bankruptcy Code and fell within the safe-harbor of section 559 of the Bankruptcy Code. The Debtors' principal secured debt consisted of a $1,855,000,000 senior secured credit facility (the "Senior Credit Facility") syndicated among a number of lenders (the "Senior Lenders") and secured by first liens on and security interests in substantially all of the Debtors' assets (other than the assets covered by the Repurchase Agreements) and junior liens on and security interests in the Debtors' assets covered by the Repurchase Agreements (the "Senior Credit Facility Collateral").

7. As part of a large-scale forbearance and restructuring in the Summer and Fall of 2007, culminating in the execution of the Override Agreement (as defined in the First Day Declaration), the Debtors granted numerous subordinate liens and security interests, including without limitation subordinate liens and security interests on the Senior Credit Facility Collateral

as additional collateral security for the Repurchase Agreements. Under the Intercreditor Agreement (as defined in the First Day Declaration) executed simultaneously with the Override Agreement, however, the Senior Lenders have the exclusive and unilateral right to enforce their liens and security interests against, and otherwise consent to dispositions of, the Senior Credit Facility Collateral, including the Equity Investments.

8. Over the course of the past 40 months, based on defaults under the Senior Credit Facility triggered by the mortgage crisis in the United States and pursuant to multiple forbearance and related agreements, the vast majority of the collateral for the Senior Credit Facility has been sold or foreclosed upon and the proceeds thereof applied to reduce the balance of the Senior Credit Facility. The collateral remaining in the Debtors' possession and control as of the Petition Date (collectively, the "Remaining Collateral") consists principally of (i) various subordinated tranches of mortgage-backed securities, including the Equity Investments, (ii) certain collateralized bond obligation management rights, (iii) whole loans, (iv) REOs, (v) claims against third parties, (vi) deposits with surety bond providers, (vii) furniture, fixtures, equipment and various forms of intellectual property, (viii) receivables for the unused amount, if any, of professional retainers, and (ix) cash collateral on deposit in the Debtors' centralized cash operating account.

9. Similarly, based on defaults under the Repurchase Agreements triggered by the mortgage crisis in the United States, all of the Repurchase Agreements have been terminated by the respective counterparties, and substantially all of the assets subject to the Repurchase Agreements have been sold or retained by such counterparties.

10. Pursuant to the Restructuring Facilitation Agreement, dated as of September 20, 2010 (the "RFA"), by and among the Debtors, JPMorgan Chase Bank, N.A., as administrative

agent under the Senior Credit Facility (the "Administrative Agent"), and certain lenders under the Senior Credit Facility that are signatories to the RFA (collectively, the "Participant Lenders"), the Administrative Agent and Participant Lenders have agreed *inter alia* to permit the Debtors to use up to $8.2 million of the cash proceeds of the Remaining Collateral in accordance with the terms and conditions of an adequate protection stipulation. The RFA provides a timeline pursuant to which the Debtors are to use their respective best efforts to liquidate the Remaining Collateral.

### C. The Equity Investments

11. As set forth more fully in the First Day Declaration, prior to the Petition Date, the Debtors were a leading issuer and long-term investor in credit-sensitive residential mortgage assets. These assets include preferred shares issued by Debtor Credit-Based Asset Servicing and Securitization LLC sponsored and managed collateral bond obligations (collectively, the "CBO Equity Investments") and net interest margin securities backed by mortgage backed securities issued by the Debtors or a third party (collectively, the "NIM Equity Investments"; together with the CBO Equity Investments, the "Equity Investments"). A true and complete description of the Equity Investments currently held by the Debtors, and subject to this Motion, is attached hereto as **Exhibit B**. As a result of the mortgage crisis in the United States over the past few years, the Debtors submit that there has been a significant decline in the value of mortgage-related assets and, consequently, their Equity Investments.

12. Shortly after the commencement of these chapter 11 cases, the Debtors began to explore various options to maximize the value of the Equity Investments. After considering several options, the Debtors determined that the best way to maximize the value for the Equity

Investments is to complete a sale of such items by December 31, 2010.[2] Specifically, if the Debtors continue to hold the Equity Investments past December 31, 2010 they will be required to prepare and file 2011 tax returns for each Equity Investment. The Debtors submit that the costs related to preparing and filing such tax returns would exceed the current value of the Equity Investments and, therefore, diminish any funds that might be available to the Debtors' estates. Notably, the Debtors estimate the current value of the Equity Investments to be approximately $200,000 in the aggregate. Indeed, it is possible that more Equity Investments will be abandoned than sold.

13. Given the need to complete such sales on an expedited basis, on December 6, 2010, the Debtors solicited bids for the Equity Investments from approximately twelve (12) financial institutions, including five (5) that act as brokers, that actively invest in such securities (the "Bidders").[3] The Debtors advised the Bidders that all bids are due by December 17, 2010, the Debtors will identify the successful bidders by December 21, 2010, and then the Debtors will require (subject to Court approval) that any sales close by no later than December 31, 2010.

14. Although the Debtors believe that the sales of the Equity Investments are within the scope of the Debtors' ordinary course of business and permitted under section 363(c) of the Bankruptcy Code, the Debtors also believe that any Purchasers will request confirmation that the proposed sales are authorized by the Bankruptcy Court, and/or made free and clear of all Liens.

---

[2] Simultaneously with this Motion, the Debtors filed a separate motion to shorten the notice period with respect to the relief requested herein so the Court can have an opportunity consider this Motion prior to December 31, 2010.

[3] At the request of the Bidders, the Debtors have agreed not to publicly disclose their identities. The Debtors, however, are willing to provide this confidential information to the Court, the U.S. Trustee and counsel for the Committee and the Administrative Agent upon request to Debtors' counsel.

15. This Motion seeks to sell the Equity Investments pursuant to the following provisions, which the *Amended Guidelines for the Conduct of Asset Sales*, adopted by this Court's General Order M-383 on November 18, 2009, require to be separately disclosed. All such provisions also are included in the Proposed Order.

- **Sale Free and Clear:** As described above, the sale of the Equity Investments will be free and clear of all Liens.

- **Deadline for Closing:** As explained above, it is imperative that the Debtors consummate the sale of the Equity Investments by no later than December 31, 2010.

- **No Good Faith Deposit.** Given the value of the Equity Investments and the need to consummate the proposed sales by December 31, 2010, the Debtors are not requiring the Bidders to submit good faith deposits.

- **Requested Findings as to Fraudulent Conveyance:** The Debtors believe the consideration that will be provided for the Equity Investments constitutes reasonably equivalent value under the Bankruptcy Code and applicable law.

- **Relief from Bankruptcy Rules 6004(h):** As set forth below, the Debtors seek relief from the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

16. Accordingly, the Debtors seek authority to sell the Equity Investments to the Purchasers offering the highest and best bid for such securities by no later than December 31, 2010 and submit that the marketing process for such sales is both fair and reasonable and will result in the highest and/or best price for the Equity Investments. Given that the purchasers and the price for the Equity Investments will be determined following the receipt of the bids from the Bidders, the Debtors submit that the purchasers will be good faith purchasers within the meaning of the Bankruptcy Code. Therefore, the Debtors assert that consummation of the proposed sales by no later than December 31, 2010 is in the best interest of their estates and creditors and will facilitate the feasibility of and the payments contemplated under any chapter 11 plan to be filed with the Court.

17. While the Debtors anticipate being able to sell all of the Equity Investments by December 31, 2010, the Debtors may be unable to locate buyers for some or all of these items. The inability to consummate a commercially reasonable sale for any of the Equity Investments would indicate that such property has no meaningful monetary value to the Debtors' estates. Further, the tax implications of keeping such property after December 31, 2010 would create a significant burden for the Debtors' estates. Accordingly, the Debtors believe that the prudent course would be to abandon the Equity Investments for which the Debtors cannot consummate a sale prior to December 31, 2010 to the respective trustee for each issuance (collectively, the "Trustees").[4]

18. The Senior Lenders retain their rights to credit bid for any or all of the Equity Investments being offered for sale by the Debtors herein. The Senior Lenders have consented to the sale of the Equity Investments to the highest and best bidder and to the abandonment of Equity Investments not sold hereunder.

## IV.  Relief Requested

19. By this Motion, the Debtors seek authority, pursuant to sections 105, 363 and 554(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and Local Rule 6007-1, (i) to sell the Equity Investments to the Purchasers offering the highest and best bid for each item free and clear of all Liens or (ii), in the alternative, authorizing the Debtors to abandon any Equity Investments for which the Debtors cannot consummate a sale by December 31, 2010 to the applicable Trustees.

---

[4]  The Trustees for the respective Equity Investments are listed on Exhibit B hereto.

## V. Basis for the Relief Requested

### A. Approval of the Sale of the Equity Investments Is Appropriate

20. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business property of the estate . . . ." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that a court may approve the sale of property outside of the ordinary course of business when it finds a good business reason for such sale); *In re Ionosphere Clubs, Inc.*, 184 B.R. 648, 653 (S.D.N.Y. 1995); *In re Global Crossings Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003).

21. Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

22. The Debtors believe that there is more than adequate business justification for the proposed sale of the Equity Investments at this time; namely, that the Debtors will be able to maximize the value for such sales and defray unnecessary administrative costs if such sales are closed prior to December 31, 2010. Furthermore, the proceeds of the sales will help fund the Debtors' chapter 11 plan to be filed with the court.

23. The Debtors submit that the notice described below constitutes adequate and proper notice of the sale of the Equity Investments and this Motion. As explained above, given the marketing completed by the Debtors to ensure the highest price is achieved, and the fact that

the Purchasers will be selected following a return of the bids by the Bidders, the Debtors submit that the sale of the Equity Investments has been proposed in good faith. In addition to procuring consent for any sales of the Equity Investments from counsel for the Administrative Agent, the Debtors shall also seek approval of any sales from counsel for the Creditors Committee. Accordingly, the Court should authorize the Debtors to consummate the proposed sales.

B. **The Sale Satisfies the Requirements of Section 363(f)**

24. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding. 11 U.S.C. § 363(f).

25. The Debtors submit that one or more of the tests in section 363(f) of the Bankruptcy Code are easily satisfied with respect to the proposed sale of the Equity Investments. The Equity Investments are encumbered by a first priority lien in favor of the Senior Lenders under the Senior Credit Facility and by certain subordinate liens pursuant to the Override Agreement and related agreements. The Override Agreement, however, is subject to the Intercreditor Agreement, which confers exclusive authority on the Senior Lenders to enforce liens against or consent to dispositions of the Equity Investments, and the Senior Lenders have consented to the sale of the Equity Investments to the highest and best bidder in accordance with the procedures set forth herein.

### C. The Purchasers Are "Good Faith" Purchasers

26. As set forth above, the Debtors believe that the Purchasers will be buyers in good faith of the Equity Investments under section 363(m) of the Bankruptcy Code and, as such, are entitled to the protections afforded thereby. Although the Bankruptcy Code does not define the term "good faith purchaser," the traditional equitable definition of "one who purchases the assets for value, in good faith, and without notice of adverse claims" has been adopted by various courts. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986); *see also Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir. 1978)).

27. Given that the Purchasers and the price for the Equity Investments will be determined following receipt of the bids by the Bidders, the Debtors submit that Purchasers will be providing substantial value for the Equity Investments and will not have engaged in "the misconduct that would destroy a purchaser's good faith status at a judicial sale [such as] fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Paolo*, 126 F.3d at 390 (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d at 1198). Further, to the Debtors' knowledge, no adverse claims exist with respect to the Equity Investments.

28. The Debtors are not seeking the authority to sell the Equity Investments to "insiders" (as defined in section 101 of the Bankruptcy Code).

### D. This Court Should Approve the Proposed Abandonment

29. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The Debtors expect to be able to sell the Equity Investments prior to December 31, 2010. In the event the Debtors do not

receive any offers for the Equity Investments, however, the Debtors submit that the inability to consummate a commercially reasonable sale of the Equity Investments would indicate that such property has no meaningful monetary value to the Debtors' estates. Furthermore, the tax implications associated with maintaining the Equity Investments past December 31, 2010 will impose a burden on the Debtors' estates. Accordingly, the Debtors contend that the abandonment of the Equity Investments for which the Debtors cannot consummate a sale by December 31, 2010 to the applicable Trustees is in the best interests of the Debtors' estates.

30. The Debtors submit that this Motion complies with Local Rule 6007-1, which requires the notice of a proposed abandonment to describe (i) the property to be abandoned, (ii) the reason for the abandonment, and (iii) the entities to whom the property is proposed to be abandoned.

### E. This Court Should Approve the Request for Waiver of Stay

31. Bankruptcy Rule 6004(h) provides, "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtors submit that, given the nature of the sale of the Equity Investments and the need to close the sales no later than December 31, 2010, cause exists for the Court to exercise its discretion and abrogate the 14 day stay provided for by Bankruptcy Rule 6004(h).

### VI. Notice

32. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the administrative agent for the Senior Lenders, Davis Polk & Wardwell LLP; (c) proposed counsel to the Creditors Committee; (d) the Trustees; and (e) all parties that have filed a notice of appearance or have requested service in these chapter 11 cases. In light of the nature of the relief requested herein and the potential harm to the Debtors' estates if the relief requested

herein is not granted, the Debtors respectfully submit that no other or further notice need be provided.

## VII.   No Prior Request

33. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (a) enter an order, substantially in the form of the Proposed Order, granting the relief requested herein, and (b) grant to the Debtors such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
       December 14, 2010

Respectfully submitted,

*/s/ Peter S. Partee, Sr.*
Peter S. Partee, Sr.
Jack A. Molenkamp
Andrew Kamensky (admitted *pro hac vice*)
Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Proposed Attorneys for Debtors
and Debtors-in-Possession*