UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| CREDIT-BASED ASSET SERVICING AND SECURITIZATION LLC, *et al.*, | ) Case No. 10-16040 (ALG) |
| Debtors.[1] | ) (Jointly Administered) |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF DELOITTE TAX LLP AS TAX ADVISORS *NUNC PRO TUNC* TO JANUARY 4, 2011

Upon consideration of the application (the "Application")[2] of the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") for entry of an order, authorizing the Debtors to employ and retain Deloitte Tax LLP ("Deloitte Tax") as tax advisors effective *nunc pro tunc* to January 4, 2011, on the terms and conditions set forth in that certain engagement letter between the Debtors and Deloitte Tax (the "Engagement Letter"), dated December 8, 2008, a copy of which is annexed to the *Declaration of Joelle Berlat* (the "Berlat Declaration") as **Exhibit 1**, all as more fully set forth in the Application; and upon consideration of the Berlat Declaration; and the Court having held a hearing on March 4, 2011 (the "Hearing") on approval of the relief requested in the Application and having considered the arguments of counsel made, and the evidence submitted, proffered or adduced at the Hearing; and the Court finding that (i) it has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. § 1334 and the *Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York* dated

---

[1] The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment Management LLC, NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish Management Group LLC.

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Application.

July 10, 1984 (Ward, Acting C.J.), (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iii) venue of the Chapter 11 Cases and the Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409, (iv) the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors and other parties in interest, (v) proper and adequate notice of the Application and the Hearing has been given and that no other or further notice is necessary, (vi) Deloitte Tax represents and holds no interest materially adverse to the Debtors or their estates and is disinterested under section 101(14) of the Bankruptcy Code (as modified by section 1107(b) of the Bankruptcy Code) and as required by section 327(a) of the Bankruptcy Code, (vii) any objections to the relief requested in the Application have been withdrawn or overruled on the merits, and (viii) good and sufficient cause exists for the granting of the relief requested in the Application after having given due deliberation upon the Application, the Berlat Declaration, and all of the proceedings had before the Court in connection with the Application. Therefore,

        IT HEREBY IS ORDERED THAT:

1.      The Application shall be, and hereby is, GRANTED to the extent set forth herein.

2.      The Debtors shall be, and hereby are, authorized to retain and employ Deloitte Tax as tax advisors effective *nunc pro tunc* to January 4, 2011 in accordance with the terms and conditions set forth in the Application and in the Engagement Letter.

3.      Deloitte Tax shall be, and hereby is, authorized to provide tax advisory services to the Debtors as described in the Application and in the Berlat Declaration, including, without limitation, the following:

        a)      Provide U.S. federal income tax reporting services with respect to the offshore structured finance vehicles listed on **Attachment 1** annexed hereto for which the Debtors owned an equity interest

           during the Debtors' tax year ending December 31, 2010 (the "Equity Investments");

    b)    Passive Foreign Investment Company ("PFIC") Reporting, and specifically, preparation of PFIC Annual Information Statement, as described in Treasury Regulation § 1.1295-1 (or any successor Internal Revenue Service Release or Treasury Regulation) and in a format suitable to support the Debtors' income inclusion required by IRC § 1295;

    c)    Preparation of Internal Revenue Service Form 5471, which is required to permit the Debtors to report certain taxable income and other events, including its position with respect to the Equity Investments; and

    d)    Preparation of tax-basis records for the Equity Investments that will serve to support the ordinary earnings and net capital gain for inspection purposes for the Equity Investments as required by the Internal Revenue Service under Treasury Regulation § 1.1295-1(g)(1).

4.    Deloitte Tax shall apply for compensation for professional services rendered in connection with the Chapter 11 Cases in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines established by the Office of the United States Trustee for the Southern District of New York, and such other procedures as may be fixed by Order of this Court.

5.    Deloitte Tax shall be paid fixed fees for its services not to exceed the amount set forth on **Attachment 1** annexed hereto, inclusive of any expenses that may be incurred by Deloitte Tax in connection with such service (the "Fees"), and Deloitte Tax's compensation shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code; provided, however, that the United States Trustee retains all rights to object to Deloitte Tax's interim and final fee applications on all grounds including but not limited to the reasonableness standard provided for in section 330 of the Bankruptcy Code.

6. Deloitte Tax shall be, and hereby is, directed to apply the unused portion of the advance payments received prepetition from the Debtors and C-BASS CBO VII Ltd. as a credit toward the full amount of postpetition Fees after such postpetition Fees are allowed pursuant to Orders of this Court awarding Fees of Deloitte Tax until such advance payment is exhausted and prior to payment under any carve-out provided for in any cash collateral or financing orders entered in the Chapter 11 Cases.

7. The Debtors shall be, and hereby are, authorized to indemnify and hold harmless Deloitte Tax, its subcontracts and their respective personnel (collectively, the "<u>Deloitte Parties</u>") pursuant to terms and conditions of the Engagement Letter and subject to the following conditions:

   a. All requests of the Deloitte Parties for payments of indemnity, contribution or otherwise pursuant to the Engagement Letter shall be made by means of application to the Court (interim or final, as the case may be) and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the orders of this Court and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnification, contribution or other payment is sought; <u>provided</u>, <u>however</u>, that is no event shall a Deloitte Party be indemnified or receive contribution or other payment from the Debtors from and against any actions or claims that a court of competent jurisdiction has determined by final order (that is no longer subject to appeal or review) to have resulted from bad faith, self dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct on the part of that or any other Deloitte Party;

   b. In no event shall a Deloitte Party be indemnified or receive contribution or other payment under the Engagement Letter if the Debtors or the representatives of the Debtors' estates assert a claim for, and a court of competent jurisdiction determines by a final order (that is no longer subject to appeal or review) that such claim arose out of the bad faith, self dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct of that or any other Deloitte Party; and

   c. In the event that a Deloitte Party seeks reimbursement of attorneys' fees from the Debtors pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be attached to Deloitte Tax's own and final fee applications, and such invoices and time records shall be subject to the United

States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(c) of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that Deloitte Tax shall not be entitled to the reimbursement of attorneys' fees and expenses other than in connection with the Engagement Letter.

8. With respect to the Engagement Letter solely as it relates to services for the Debtors from the inception of the Chapter 11 Cases to the effective date of any plan of reorganization of the Debtors:

   a) The second sentence of section 2 of the General Business Terms of the Engagement Letter shall be deemed deleted;

   b) The term "gross negligence," shall be deemed included in the first sentence of section 6 of the General Business Terms of the Engagement Letter prior to the phrase "bad faith";

   c) The second sentence of section 6 of the General Business Terms of the Engagement Letter shall be deemed deleted;

   d) Nothing contained in section 10 of the General Business Terms of the Engagement Letter shall alter the duties imposed by law on Deloitte Tax. It is understood and agreed that Deloitte Tax is an independent contractor and that it is not, and will not be considered to be, an agent, partner, or representative of the Debtors;

   e) The first sentence of section 16 of the General Business Terms of the Engagement Letter shall be modified to include the following at the end of this sentence: "except to the extent the Engagement Letter is governed by the bankruptcy laws of the United States"; and

   f) Section 16 of the General Business Terms of the Engagement Letter shall not be deemed to affect the jurisdiction of the Court over matters related to the Engagement Letter and the services provided thereunder; <u>provided</u>, that, in the event, the Court does not have or chooses not to exercise jurisdiction over such matters, then such section of the General Business Terms of the Engagement Letter shall be enforceable as written.

9. Notwithstanding anything to the contrary in the Application or the Engagement Letter, Deloitte Tax shall not use the services of independent contractors to perform the tax advisory services described herein.

10. Notwithstanding anything to the contrary in the Application or the Engagement Letter, Deloitte Tax shall not be entitled to reimbursement of any legal fees or expenses arising from or related to the Application or the Engagement Letter, or services provided in accordance thereto, other than the legal fees and expenses incurred in connection with a claim for indemnification, as set forth in paragraph 7 above.

11. Deloitte Tax shall provide ten (10) business days' notice to the Debtors, the United States Trustee for the Southern District of New York, and counsel to the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases prior to any increases in the rates set forth in the Application and such notice must be filed with this Court.

12. To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, the Berlat Declaration, and this Order, the terms of this Order shall govern.

13. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
       March 4, 2011

                                                  */s/ Allan L. Gropper*
                                                  THE HONORABLE ALLAN L. GROPPER
                                                  UNITED STATES BANKRUPTCY JUDGE

**ATTACHMENT 1 TO ORDER**

|    | Equity Investment | Fee |
|---|---|---|
| 1. | C-BASS CBO IV Ltd. | $6,500.00 |
| 2. | C-BASS CBO V Ltd. | $6,500.00 |
| 3. | C-BASS CBO VI Ltd. | $6,500.00 |
| 4. | C-BASS CBO VII Ltd. | $18,000.00 |
| 5. | C-BASS CBO VIII Ltd. | $6,500.00 |
| 6. | C-BASS CBO IX Ltd. | $6,500.00 |
| 7. | C-BASS CBO X Ltd. | $6,500.00 |
| 8. | C-BASS CBO XI Ltd. | $6,500.00 |
| 9. | C-BASS CBO XII Ltd. | $18,000.00 |
| 10. | C-BASS CBO XIII Ltd. | $6,500.00 |
| 11. | C-BASS CBO XVI Ltd. | $6,500.00 |
| 12. | C-BASS CBO XV Ltd. | $18,000.00 |
| 13. | C-BASS CBO XVI Ltd. | $6,500.00 |
| 14. | C-BASS CBO XVII Ltd. | $6,500.00 |
| 15. | C-BASS CBO XVIII Ltd. | $6,500.00 |
| 16. | C-BASS CBO XIX Ltd. | $6,500.00 |
| 17. | CWABS 2004-6N | $2,687.50 |
| 18. | C-BASS 2003-CB6 NIM Ltd. | $2,687.50 |
| 19. | C-BASS 2004-CB1 NIM Ltd. | $2,687.50 |
| 20. | FREMONT NIM TRUST CI-3 NIM 2004-4 | $2,687.50 |

|     | **Equity Investment**                                    | **Fee**      |
| --- | -------------------------------------------------------- | ------------ |
| 21. | FINANCE AMERICA NIM TRUST CI-3 2004-3                    | $2,687.50    |
| 22. | FREMONT NIM TRUST CI-4 NIM 2005-1                        | $2,687.50    |
| 23. | FREMONT NIM TRUST CI-5 NIM 2005-2                        | $2,687.50    |
| 24. | ACE NIM TRUST 2005-AG1                                   | $2,687.50    |
| 25. | ARSI NIM TRUST 2004-W3                                   | $2,687.50    |
| 26. | GEWMC 2005-1 NIM                                         | $2,687.50    |
| 27. | SHARPS NIM 2004-RM2N NIM                                 | $2,687.50    |
| 28. | GSAMP 2005-HE5-N                                         | $2,687.50    |
| 29. | CMO HOLDINGS II LTD. BSABS HE2 NIM TRUST 2006-2          | $2,687.50    |
| 30. | CMO HOLDINGS II LTD. BSABS HE12 NIM TRUST 2005-12        | $2,687.50    |
| 31. | ARGENT NIM 2004-WN5                                      | $2,687.50    |
| 32. | SOUNDVIEW C1-9                                           | $2,687.50    |
|     | **Total**                                                | $181,500.00  |